James B. RUSSOM et al.

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION et al.**

Civ. A. No. 2055.

United States District Court
W. D. Texas, San Antonio Division.
July 20, 1956.

Josh H. Groce, San Antonio, Tex., Eskridge, Groce & Hebdon, San Antonio, Tex., of counsel, for plaintiffs.

Charles W. Trueheart, San Antonio, Tex., Trueheart, McMillan, Russell & Westbrook, San Antonio, Tex., of counsel, for defendants.

RICE, Chief Judge.

The jury in this case has found, in response to special interrogatories, that at the time of the accident in question Norbert Enslen was using the Critchfield family automobile with the implied permission of Col. Critchfield. It is undisputed that on the occasion of the accident Enslen was using the Critchfield family car with the express permission of Mrs. Critchfield, and the jury has likewise found that Mrs. Critchfield was both impliedly and apparently authorized by her husband to grant permission to Enslen to use the car on the occasion of the accident. No other issues were requested to be submitted and the evidence supports the findings of the jury.

There have been so many motions and counter-motions, and rulings by the court, both on the law and on the facts of this case, that it is deemed advisable for the court to file a memorandum of decision, setting forth the actions of this court and the reasons therefor. As a factual background for the holdings of this court, the following will suffice:

Around January 9, 1950, Richard E. Critchfield, a Lieutenant Colonel in the Air Force, then stationed in Dayton, Ohio, owned, as a family car, a 1948 Oldsmobile automobile which he was desirous of selling, and for that purpose inserted an advertisement in the paper. Shortly thereafter, Norbert Enslen, a college graduate and the owner of his own business, being interested in the purchase of an automobile to replace his older Oldsmobile, in response to the Critchfield advertisement, called upon Critchfield at his home in the evening, introduced himself and evinced an interest in the car. With Critchfield's express consent, he tested out the car briefly by driving it alone around the block a time or two. A couple of nights later, Enslen returned with his wife and family to demonstrate the car to them, and Critchfield not being at home, he obtained the keys from Mrs. Critchfield, and used the car with her permission for an hour or so, and then returned it with the keys to Mrs. Critchfield. A day or so later, the terms of the sale were agreed upon, and by appointment Critchfield picked Enslen up on Saturday morning at his place of business and Enslen, with Critchfield's express permission, drove the car in question to the Winters National Bank to consummate the purchase and sale of the car. The bank, however, was unable to finance the deal on such short notice, so Critchfield took the car on to his home, after advising Enslen that he was leaving at noon for Florida, but would be back about Tuesday and the deal would be closed on Wednesday of the following week. A down payment of $250 was made by Enslen to Critchfield in the form of a check dated Friday, January 13th. Critchfield left on a flight for Florida around noon, after advising his wife that he had about sold the car and after cautioning her that if she went down town in it to be careful. Critchfield had never placed any restrictions on his wife's use of this family automobile nor upon her right to permit others to use it, and on occasions in the past she had permitted others, such as relatives and close friends, to use it with Critchfield's knowledge.

Upon Enslen's return to his home, he found a message to the effect that if he would drive down near Cincinnati, a distance of 54 miles, he could obtain a set of new tires at a reduced price. He contemplated putting the new tires on the Critchfield automobile and putting the Critchfield tires on his older Oldsmobile, the tires on which were bad, as well as the battery. Enslen then phoned Mrs. Critchfield and asked if he could use the Critchfield car to get the tires and Mrs. Critchfield gave her express permission for the use of the car for that purpose. In driving down toward Cincinnati, in the town of Mason, Enslen was involved in an accident, resulting in severe personal injuries to Margaret Russom and injuries in a lesser degree to Jean Lee and Thomas Combs. James Russom's automobile was likewise damaged.

Critchfield returned from Florida the following Tuesday, January 17th, and on Wednesday he and Enslen reported the

accident to Critchfield's insurer, United Services Automobile Association, the defendant in this case, and the defendant was advised promptly that there were personal injuries involved as well as property damage loss and a collision loss, and Critchfield explained that the accident had not been reported sooner because he was out of the state at the time of the accident. Enslen paid the $50 deductible collision damage to the Critchfield car and United Services paid the remainder, and the sale of the car to Enslen was consummated a few days later.

United Services, through its attorneys and adjusters, communicated with the injured parties, who, shortly thereafter, employed attorneys. Arrangements were made for a medical examination, an under-cover investigation, and negotiations for settlement were carried on between the claimants and United Services representatives over a period of nearly a year, and no question of coverage for Enslen was raised by United Services during that time.

In December of 1950, suits were brought against Enslen by the various plaintiffs for damages in excess of $50,000. Service of process was had, and on the 27th day of December, 1950, the United Services demanded of and obtained from Enslen a non-waiver agreement and for the first time raised the question of want of coverage for Enslen. The attorneys for United Services thereupon filed answers in the cases but only a few weeks later, in February of 1951, United Services denied any obligation to Enslen and had their attorneys withdraw from the case. Thereafter, around April first, Enslen reported the accident for the first time to Standard Accident Insurance Company, which had the policy covering Enslen's older car. Standard immediately raised the question of delayed notice, and Enslen executed to Standard another non-waiver agreement, whereupon Standard substituted its attorneys in the cases and thereafter continued handling the cases to conclusion under the non-waiver agreement.

At no time prior to February, 1953, did United Services have a permit to do business in Ohio, and had no agents for service in that state. In October of 1951, Standard employed Josh H. Groce, an attorney of the San Antonio, Texas, Bar, the city in which the Home Office of United Services is located, and Mr. Groce communicated the fact of his employment in the matter in October, 1951, to Mr. Max Wier, head of the claim department of said association. United Services' policy provided liability coverage for "any person while using the automobile * * provided the actual use of the automobile is by the named insured or with his permission." Standard's policy provided coverage for Enslen while driving the Critchfield car, but provided that such insurance "shall be excess insurance over any other valid and collectible insurance available" to Enslen. Standard's attorneys continued to handle the suits, which were filed by the plaintiffs in Dayton, and on March 18, 1953, Groce wrote Wier advising him of a settlement demand of $15,000, $10,000 for Margaret Russom and $5,000 for all other claims, and advising further that Standard was defending under reservation of rights and was contending that their coverage, if any, was excess over and above primary coverage on the part of United Services. Wier did not answer this letter. In February of 1953, United Services for the first time designated the Registrar of Motor Vehicles in Ohio as an agent for service upon United Services, which fact was unknown to the plaintiffs and their attorneys and Standard and its attorneys, until long after the present suit was filed in San Antonio.

On October 18, 1954, a hearing on the suits was held in the Court of Common Pleas of Dayton, Ohio. The plaintiffs all appeared in person and by their attorneys and Enslen appeared by his attorneys, who had been furnished by Standard. A jury was waived by all parties, and the causes were submitted to the court. The attorneys for the plaintiff made rather a full opening statement. Each of the plaintiffs testified at length

both as to the happening of the accident and the damages suffered by them. A doctor, an orthopedic specialist, testified at length to the serious and permanent injuries to Margaret Russom. The attorneys for the plaintiffs argued the case to the court and stated that although the plaintiff Margaret Russom would accept whatever the judge awarded, plaintiffs' attorney felt that a judgment for her in the sum of $20,000 should be rendered.

No cross-examination was made by the defendant's attorneys; no defense was offered, and the defendant's attorney stated that if the judgment did not exceed $20,000 he, the defendant's attorney, had agreed with the plaintiffs' attorney that there would be no appeal. The court thereupon pronounced judgment in favor of the plaintiff Margaret Russom in the sum of $20,000.

Judgment was likewise pronounced under similar circumstances in favor of James Russom in the sum of $5,000 for his loss of services and medical expenses for his wife, as well as for $150 for damages to his car, and for Jean Lee judgment was pronounced for $500, and for Thomas Combs judgment was pronounced for $300. No contention has been raised that these judgments were not reasonable, either as to liability or amount.

On October 22, 1954, this suit was filed by James Russom, Margaret Russom, Jean Lee and Thomas Combs. The plaintiffs were represented by Mr. Groce, who, in addition to having been employed by Standard Accident Insurance Company, was likewise employed by the individual plaintiffs.

On November 1, 1954, under a loan receipt agreement prepared by Groce, Standard Accident Insurance Company loaned to the plaintiffs $6,750, it being recited that said sum was repayable out of the first recovery against United Services in this cause, plus interest and attorney's fees. The loan agreement was similar to, but even stronger than, the loan receipt agreement prepared by the same attorney in the case of Celanese Corp. of America v. John Clark Industries, 5 Cir., 214 F.2d 551, the loan agreement in this instance specifically providing that the plaintiffs constituted themselves trustees of an express trust for the benefit of Standard.

United Services filed its answer alleging principally that Enslen's use of the Critchfield car was not with the permission of the named insured. It then filed its third-party complaint against Standard Accident Insurance Company and alleged that although the terms of Standard's policy were not known to United Services, "under it there is or may be full or partial liability either to the plaintiffs or to this defendant for all or part of the plaintiffs' claim  *  *  * ".

Standard answered and admitted the issuance of said policy, but denied any liability as third-party defendant on the grounds that Standard's policy was only excess over and above United Services' policy limits of 10/20/5 thousand dollars, and it furnished a copy of its policy to United Services. Subsequently, United Services, in a brief submitted in this cause, agreed that under the terms of its policy Standard "can go out of this case with its costs as defendant", and United Services further "frankly admitted that in the light of the fact that Standard's policy would not inure to United Services, Standard should go out of the case with its costs as a third party defendant". About the same time that United Services admitted that Standard should go out of the case as a third-party defendant, however, United Services filed its motion asking that Standard be required to join as an involuntary plaintiff in this cause "as the real party in interest", because of its loan receipt.

Standard, in turn, filed its motion for summary judgment, urging "that it is not a necessary party to this suit either as plaintiff or third party defendant", and cited in its briefs the Celanese case, supra. This court, having tried the Celanese case and the loan receipt procedure therein having been upheld, overruled the defendant's motion to join

Standard Accident Insurance Company as an involuntary plaintiff herein.

Thereupon, defendant filed an amended third-party complaint, again asking that Standard be retained in the case as a third-party defendant, rather than an involuntary plaintiff; whereupon the plaintiffs and Standard filed an amended motion for summary judgment, asking that Standard be dismissed. United Services, reversing its previous position as above quoted, took the position that Standard Accident's policy was the primary policy, and that United Services was only excess. United Services likewise took the position that since the policy was written on an automobile principally garaged in Ohio, was mailed to Ohio to permanent legal residents of Ohio, and the accident having occurred in Ohio, then, in construing the policy, the law of Ohio would be controlling, and relied principally on the case of Maryland Casualty Co. v. Bankers' Indemnity Ins. Co., 51 Ohio App. 323, 200 N.E. 849. It contended further that Enslen's policy having been delivered in Kentucky, would be controlled by the Kentucky law, and cited New Amsterdam Casualty Co. v. Hartford Accident & Indemnity Co., 6 Cir., 108 F.2d 653.

Plaintiffs and Standard took the position that since United Services was a reciprocal insurance exchange under the Texas law, whose policies were on forms approved by the Texas Insurance Commission, and did an inter-insurance business solely through individual attorneys-in-fact who were residents of San Antonio, Texas, and since the policy had been applied for by mail and the last act done, namely, the countersigning of the policy by an attorney-in-fact for the subscribers at the defendant exchange, was done in San Antonio, Texas, then, under the cases of Ruhlin v. New York Life Ins. Co., 3 Cir., 106 F.2d 921, and Metropolitan Life Ins. Co. v. Greene, Tex.Civ.App., 93 S.W.2d 1241, the construction of United Services' policy would be controlled by the Texas law, and under the case of Great American Indemnity Co. v. McMenamin, Tex.Civ.App., 134 S.W.2d 734, Standard's policy would be excess and

United Services' would be primary. However, the plaintiffs and Standard went farther and stated that it was immaterial as to what state law governs, in that the laws of Ohio, Kentucky and Texas, are all the same relative to a construction of these policies, and cited in support of their position the Ohio cases of Aetna Casualty & Surety Co. v. Buckeye Union Cas. Co., 157 Ohio St. 385, 105 N.E.2d 568, 31 A.L.R.2d 1317; Travelers' Indemnity Co. v. State Automobile Ins. Co., 67 Ohio App. 457, 37 N.E.2d 198; and Trinity Universal Ins. Co. v. General Accident, Fire & Life Assur. Corp., 138 Ohio St. 488, 35 N.E.2d 836. As to the Kentucky law, plaintiffs and Standard cited State Farm Mut. Auto Ins. Co. v. Hall, 292 Ky. 22, 165 S.W.2d 838. Plaintiffs and Standard likewise cited 8 Appleman on Insurance Law and Practice, 333 and 336. This court agreed with plaintiffs and Standard, and, therefore, sustained the motion of plaintiffs and Standard Accident Insurance Company for the latter to have summary judgment herein, and dismissed the third-party complaint against Standard Accident Insurance Company, holding that United Services' policy was primary and Standard's was only excess at most.

The principal and only fact issue requested to be submitted to the jury in this case was whether or not, on the occasion of the accident in question, Enslen was using the Critchfield family car with the permission of the named insured. On this issue both plaintiffs and defendant filed motions for summary judgment after the depositions of all of the witnesses having knowledge had been taken. Defendant principally urged the decision of Fox v. Crawford, Ohio App., 80 N.E.2d 187, again contending that the law of Ohio prevailed on the construction of United Services' policy.

Fox v. Crawford was a case in which the trier of the facts had found as a fact that there was no implied permission of a second permittee to use the insured's automobile, and the question before the court on appeal was whether or not there was sufficient evidence to support such

finding, and the court held that evidence was sufficient.

■ There is certain dicta in Fox v. Crawford, taken from the case of Card v. Commercial Casualty Ins. Co., 20 Tenn. App. 132, 95 S.W.2d 1281, 1284, a decision of an intermediate court in Tennessee, upon which the defendant relies, to the effect that a named insured in a policy of automobile insurance cannot delegate "discretionary power to select 'additional assureds'" by authorizing someone else to grant permission for him. This statement was wholly unnecessary to the decision of Fox v. Crawford and it conflicts with other statements made in the same opinion, wherein the court states that one spouse's authority to act for the other in granting permission for the use of the car to third parties "may be implied, as in other agencies, by acts and conduct" [80 N.E.2d 189], which was the true situation here. Furthermore, in the later decision of the Ohio intermediate appellate court, in the case of Marolt v. Lisitz, 94 Ohio App. 298, 115 N.E.2d 169, 174, 175, the court said:

"Failure to prove that the bailee * * * had authority to delegate permission from his wife * * * appears to us to be adequate explanation of the decision in Fox v. Crawford * * *."

Dicta of an intermediate appellate court under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is not binding upon this court and need not be followed by it, even if the law of Ohio did prevail in this case. See New England Mut. Life Ins. Co. v. Mitchell, 4 Cir., 118 F.2d 414, certiorari denied 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505. Furthermore, the case of Card v. Commercial Casualty Ins. Co., 95 S.W.2d 1281, cited in Fox v. Crawford, as authority, has been inferentially overruled on this particular point in the case of Howell v. Accident & Casualty Ins. Co., 32 Tenn.App. 83, 221 S.W.2d 901.

■ In my opinion, this was not a case of a mere first permittee granting permission to a second permittee to operate an automobile and seeking thereby to bring the second permittee within the coverage of the policy. This case is more nearly like the cases of United Services Automobile Ass'n v. Preferred Accident Ins. Co., 10 Cir., 190 F.2d 404; United Services Automobile Ass'n v. Zeller, Tex. Civ.App., 135 S.W.2d 161; Robinson v. Fidelity & Cas. Co., 190 Va. 368, 57 S.E. 2d 93; Drake v. General Accident, Fire & Life Assur. Corp., 88 Ga.App. 408, 77 S.E.2d 71; and Pennsylvania Thresherman & Farmers' Mut. Cas. Ins. Co. v. Crapet, 5 Cir., 199 F.2d 850, in each of which cases a family or other close relationship of the parties in the use of the automobile was involved. Consequently, this court overruled the motions for summary judgment of both plaintiffs and defendant and submitted the question of permission to the jury, with the above stated results.

■ On the eve of the trial of this case before a jury, defendant filed an amended answer, setting up specifically, as a fourth defense, a contention to the effect that the judgments upon which the plaintiffs sued were not "after actual trial" but were in substance and effect agreed judgments, at least with respect to the amounts thereof, and the defendant therefore contended that the condition precedent set forth in the "no action" clause had not been complied with and the defendant cited in support thereof Wright v. Allstate Ins. Co., Tex.Civ.App., 285 S.W.2d 376, 378.

The Wright case is clearly distinguishable from the case at bar on the facts. In the Wright case there was no "actual trial" and the judgment showed on its face that a compromise settlement had been effected and the judgment recited "that such compromise by way of agreed judgment" should be approved. On the other hand, the judgments in favor of the respective plaintiffs in this case which were taken in the Court of Common Pleas in Ohio, and the procedure followed there, were almost identical with the judgment and procedure followed in the Ohio case of Ranallo v. Hinman Bros. Const. Co., D.C., 49 F.Supp. 920, affirmed Buckeye

Union Casualty Co. v. Ranallo, 6 Cir., 135 F.2d 921, certiorari denied 320 U.S. 745, 64 S.Ct. 47, 88 L.Ed. 442, and the procedure likewise followed in the case of Great American Indemnity Co. v. McMenamin, supra. It is true that over objection of plaintiffs, the attorney for the defendant in the Ohio cases, when his deposition was taken in this case, was required to state certain of his conclusions both with reference to the judgments and as to the loan receipt transaction. These conclusions are obviously improper and in some respects even conflict with what the record shows was actually done. The record of the trial and the loan agreement both being clear and unambiguous, improper conclusions given by this attorney should not be permitted to alter them. United Services was not a "stranger" to these judgments in that it was an indemnitor with notice and an obligation to defend, which obligation it breached. 42 C.J.S., Indemnity § 32, p. 613; 23 Tex.Jur., 533.

Plaintiffs have presented a judgment that requires the defendant to pay interest on the entire $25,000 of the judgments rendered for the injuries to Margaret Russom, from the date said judgments were recorded, namely, October 21, 1954, until paid. Under the defendant's policy, the defendant is obligated to pay

> "* * * all interest accruing after entry of judgment until the company has paid, tendered, or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon".

This language to me is clear and unambiguous, and it is undisputed that the company has not paid, tendered, or deposited any sums whatsoever. Mr. Appleman, then head of the Legal Department of State Farm Mutual Automobile Insurance Company, in his book "Automobile Liability Insurance", at page 209, says of this particular clause:

> "The intention of the framers is quite clear. In addition to the policy limits, the company intends to pay * * * all interest accrued, even on that portion in excess of the policy limits. This common sense interpretation is confirmed by Mr. Sawyer." [1]

It would seem that the framers of the policy, for once, used language that was clear and unambiguous to accomplish the intended result, and this clause has been construed to require the company to pay interest on the entire judgment, even that portion thereof in excess of its policy limits, in the cases of Wilkerson v. Maryland Cas. Co., D.C., 119 F.Supp. 383, affirmed 4 Cir., 210 F.2d 245, and Underwood v. Buzby, D.C., 136 F.Supp. 957. The Underwood case was decided under Pennsylvania law, and on the basis that under such law insurance policies, if ambiguous, are construed most strongly against the insurer. Such is also the law in Texas (24 Tex.Jur. 696) and in Ohio (22 Ohio Jur. 339).

However, the Supreme Court of California, in the case of Sampson v. Century Indemnity Co., 8 Cal.2d 476, 66 P.2d 434, 109 A.L.R. 1162, held that the phrase "all interest" in this clause meant interest only on that portion of the judgment not in excess of the policy limits, and under the doctrine of Erie R. Co. v. Tompkins, the Court of Appeals for the Ninth Circuit in Standard Accident Ins. Co. of Detroit, Mich., v. Winget, 197 F.2d 97, was required to follow the Sampson case. The Sampson case was likewise followed by a New York trial court in Home Indemnity Co. v. Corie, 206 Misc. 720, 134 N.Y.S.2d 443, 446, and it was also followed by a divided court in the case of Morgan v. Graham, 10 Cir., 228 F.2d 625. These seem to be all of the authorities on this question at this time.

Plaintiffs, pursuant to Rule 68, Fed. Rules Civ.Proc. 28 U.S.C.A., have offered to accept without appeal a judgment not including interest on the excess portion, but defendant has declined to accept this offer.

---

1. Sawyer—Automobile Liability Insurance, 81, 82.

I therefore follow the Wilkerson and Underwood cases as being the most logical decisions, and decline to follow the California, New York and Oklahoma constructions of this clause of the policy.