**UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellant,**

**v.**

**James B. RUSSOM et al., Appellees.**

**No. 16298.**

United States Court of Appeals
Fifth Circuit.

Jan. 31, 1957.

Rehearing Denied Feb. 26, 1957.

C. W. Trueheart, San Antonio, Tex., Trueheart, McMillan, Russell & Westbrook, San Antonio, Tex., for appellant.

Josh H. Groce, San Antonio, Tex., Eskridge, Groce & Hebdon, San Antonio, Tex., of counsel, for appellees.

Before CAMERON, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The insurer, United Services Automobile Association, asserting, as it has frequently but unsuccessfully in these family automobile situations, United Services Automobile Association v. Preferred Accident Insurance Co., 10 Cir., 190 F.2d 404; United Services Automobile Association v. Zeller, Tex.Civ.App., 135 S.W. 2d 161, error dismissed, judgment correct, that use of the car was not with permission of the named assured, denies liability outright. But unwilling, perhaps in keeping with the military status of its clientele, to put its trust altogether in this Maginot Line, it, as do so many others, Maryland Casualty Co. v. Southern Farm Bureau Casualty Insurance Co., 5 Cir., 235 F.2d 679; Continental Casualty Co. v. Suttenfield, 5 Cir., 236 F.2d 433, falls back on fluid defenses the effect of which is to say that it is not liable because *another* is, or partially is. And, like General Insurance Co. of America v. Western Fire & Casualty Co., 5 Cir., 241 F.2d 289, all but forgotten is the accident[1] between Enslen and the Russoms which set these intermeshing cogs in motion. For now concern is whether United's[2] policy protects Enslen

---

1. The vehicle involved, a 1948 Oldsmobile registered in the name of Lt. Col. Richard E. Critchfield, U.S.A.F., stationed in Dayton, Ohio, was, at the time of the accident, January 14, 1950, being used and driven by Enslen with the express permission of Mrs. Critchfield. Col. Critchfield was away from his home on an Air Force mission. Margaret Russom, Jean Lee and Thomas Combs, occupants of the Russom automobile were injured.

2. United Services Automobile Association issued its policy at San Antonio, Texas, September 15, 1949, the face of the policy showing "Name of insured" to be Lt. Col. Richard E. Critchfield, Dayton, Ohio. Policy limits for bodily injury were $10,-

000.00/$20,000.00 It contained the traditional Omnibus Clause:
"III *Definition of Insured.* With respect to the insurance for bodily injury liability * * * the unqualified word 'insured' includes the named insured and also includes any person while using the automobile * * *, provided the actual use of the automobile is by the named insured or with his permission. * * *"
As to P.L. and P.D. liability coverage, it also contained the usual "Other Insurance" clause:
"18. Other Insurance. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the ap-

as an additional assured under the Omnibus Clause; and if it does, whether it must bear the loss altogether or can parcel all or part of it out to Enslen's insurer, Standard,[3] especially since Standard was the moving figure[4] in the disposition of the Ohio suits and, as lender under a loan receipt,[5] is a substantial beneficiary of the jury verdict and judgment below against United.

In the course of its defenses, United takes us on a spirited, nationwide juridical conflicts bus ride as it proceeds from Ohio to Texas, Texas to Ohio, to Kentucky, and back to Ohio stopping en route only long enough to take on, as

plicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, *the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to said automobiles or otherwise.*" (Italics supplied.)

3. Standard Accident Insurance Company issued at Newport, Kentucky, August 1, 1949, a policy with $10,000.00/$20,000.00 limits, with Norbert W. Enslen as "Name of insured" covering his specified automobile. It contained a drive-other-car extension of coverage so that insurance was available to Enslen while driving the Critchfield car.

The Omnibus and Other Insurance Clauses were identical with United's clauses, note 2, supra. Especially significant is the italicized portion Clause 18, note 2, supra, which makes Standard's drive-other-car coverage "excess" insurance.

4. Immediately on his return to Dayton, Col. Critchfield gave required notice to United of the accident, and it undertook investigation and handling of the claim on behalf of Enslen with no indication that coverage would be denied. On December 11, 1950, four suits were filed in Court of Common Pleas, Ohio, by the Russom group against Enslen. Apparently it was the filing of these suits which led United on December 27, 1950, to demand, and obtain a non-waiver agreement from Enslen. Within two months, on February 27, 1951, United formally denied any and all liability to Enslen.

Standard by non-waiver agreement, June 21, 1951, asserting failure by Enslen to give notice prior to March 25, 1951, undertook the defense of these suits. October 18, 1954, the cases were heard and presented to the Court after waiver of jury trial. The plaintiffs testified; some medical testimony was put on; the defendant did not cross examine nor offer rebuttal evidence and Enslen's counsel stated in open court that if the court fixed damages in amounts not exceeding a specified sum for each, defendant would not appeal. The Court entered judgment for those specific amounts:

| | |
|---|---|
| Margaret Russom | $20,000.00 |
| James B. Russom (husband) | 5,000.00 |
| Jean Lee | 500.00 |
| Thomas Combs | 300.00 |

The decree recited:

"Whereupon, the Court proceeded to hear the cause, in open Court, duly in session for said trial, upon the issues joined in the pleadings, and, upon the evidence adduced, the Court finds for the plaintiff and against the defendant, and does hereby award the plaintiff damages from the defendant in the amount of * * *. Exceptions of the defendant noted."

5. Four days after the Ohio judgments, October 22, 1954, the Russoms, Combs and Lee filed this suit in Texas against United. On November 1, 1954, Standard, under a Loan Receipt Agreement, advanced $6,750.00 to the Russom group " * * * as a loan, to be repaid with interest out of the first recovery against United * * *, and, [the Russoms] * * * agree that they shall never further pursue * * * Standard * * on any claim growing out of the * * * accident and the above described judgments * * *." The Court denied United's motion to make Standard an involuntary plaintiff and entered Summary Judgment in Standard's favor on United's Third Party Complaint.

The Court below, in an able, detailed opinion, D.C., 143 F.Supp. 790, adjudged United liable for the amounts (plus costs), note 4, supra, for Combs and Lee and $10,182.48 to James B. and Margaret Russom (only one person injured) but awarded them interest at 6% on the full amount ($25,032.98) of the Russoms' Ohio judgments.

passengers, favorable local jurisprudence but departing quickly lest unfavorable and unwanted principles might come aboard.

■ Beginning our fast travels, this time to Ohio, United's contention that Enslen did not have Col. Critchfield's permission to use the car is, in this mid-twentieth automotive century, almost a feudal recrudescence. For despite the fact that the 1948 Oldsmobile was the Critchfield family car for use by both husband and wife and was loaned from time to time by Mrs. Critchfield with the Colonel's acquiescence to friends and relatives for temporary trips, United insists that the Colonel had never *expressly* clothed his wife with authority to allow others to use it, and Ohio, as a matter of law, declares that the named assured cannot impliedly authorize his permittee to allow sub-permittees to use the vehicle.

The claim is unsupported by facts and, if Ohio law applies, it does not impose this unrealistic result. Enslen was no stranger to the Critchfield household. Indeed, they had an acute interest in him as did he in the 1948 Oldsmobile. A few days before, about January 9, 1950, he had answered the Critchfield's classified ad offering this car for sale at which time the Colonel allowed him to take it on a short demonstration drive. A day or so later, he returned and, in the Colonel's absence, obtained Mrs. Critchfield's permission to demonstrate the car to his family for a couple of hours. Colonel Critchfield learned of this but never chastised or rebuked his wife or indicated, any more than would any other contemporary husband, that his wife had exceeded the scope of her employment, agency, or authority. Subsequently, a bargain was struck, Enslen

gave the Colonel a $250.00 check as a down payment, and the next day Enslen and the Colonel drove the car to a bank to arrange financing. As some delay was encountered in financing, the car was to remain with the Critchfields until the transaction was closed. On the day of the accident, desiring to obtain a new set of tires for this car (he intended to use the Critchfield old tires on his present automobile to enhance its resale value), Enslen sought, and obtained, Mrs. Critchfield's permission to drive the car to Cincinnati to buy some specially advertised tires. On this trip, the accident occurred. When Colonel Critchfield returned a few days later, he reported the accident to United on the assumption that Enslen, using the car under these circumstances, was covered. Use by Enslen was further ratified since title was subsequently transferred formally to Enslen January 26, 1950.

If this does not compel, at least it amply supports, the jury special findings that in lending the car to Enslen, Mrs. Critchfield "had the implied authority of her husband to permit * * * Enslen to use * * *" it and Enslen's use of the car was " * * * with the implied permission of Colonel Critchfield."

If Ohio [6] law is the governing standard, then Fox v. Crawford, Ohio App., 80 N.E.2d 187, 189, does not, as United insists, forbid implied authorization. Portions of the opinion perhaps declare that the named assured may only give express permission to a user to allow others to use the car. But from the opinion as a whole, it is clear that all the case stands for is that authority in the permittee to allow use by a sub-permittee will not be implied merely from the original grant of permission by the named assured. But it does not remotely hold

---

6. United writes insurance only for officers of components of the United States Armed Forces and Foreign Service Officers. The policy is shown to be signed at San Antonio, Texas, its home office with a wide territorial coverage. By a unique Appearance and Service of Process clause, it agrees to answer suit in any jurisdiction where the loss occurs. Designed for professional clientele whose roots are unavoidably shallow, the insurance hardly meets their ambulatory needs if construction of the policy depends on the coincidence of the duty-site at the moment the policy is delivered by mail.

that authority may not be implied. For it recognizes that it is but a question of agency and " * * * authority to act for * * * [named assured] may be implied, as in other agencies, by acts and conduct, but in order to bind * * * [the named assured] by * * * [the permittee's] acts his authorization must be express, implied or subsequently ratified by * * * [the named assured] * * * "; and in this process, the named assured can " * * * signify her permission to use the insured automobile by a course of conduct, or * * * mere silence to bring * * * [the sub-permittee] within the omnibus clause * * * " so long as " * * * such implied permission * * * [was] by act or conduct of * * * the named insured, and * * * amounted to her intended selection of him as such driver * * *." And see Marolt v. Lisitz, 94 Ohio App. 298, 115 N.E.2d 169, 175; West v. McNamara, 159 Ohio St. 187, 111 N.E.2d 909.

Ohio then fits in with the general principle that whether the named assured authorized the permittee to allow others to use the vehicle is to be measured in a realistic way in which, once established, implied permission has exactly the same significant force as one expressly made with more elaborate formality. Indiana Lumbermen's Mutual Ins. Co. v. Janes, 5 Cir., 230 F.2d 500; Pennsylvania Thresherman & Farmers' Mut. Cas. Ins. Co. v. Crapet, 5 Cir., 199 F.2d 850; United Services Automobile Association v. Preferred Accident Insurance Co., 10 Cir., 190 F.2d 404; United Services Automobile Association v. Zeller, Tex.Civ.App., 135 S.W.2d 161, error dismissed, judgment correct; Robinson v. Fidelity & Casualty Co. of New York, 190 Va. 368, 57 S.E.2d 93; Drake v. General Accident, 88 Ga.App. 408, 77

S.E.2d 71; 7 Appleman's Insurance Law and Practice, Sec. 4365.

A fact some underwriters are reluctant to appreciate is that, by the Omnibus Clause, the insurer has committed to the named assured a wide capacity to determine to whom and under what circumstances coverage will be extended. Uncertainty, on the proofs, as to whether the assured has impliedly given his consent to the particular use does not weaken the decisive effect of it once that fact has been judicially determined.

Enslen was, therefore, an assured and entitled, as of right, to defense by United.

■ But here United, now dissatisfied with Ohio, resumes its perambulations on this scenic-conflicts tour. The immediate cause is its contention that disposition of the Ohio litigation, note 4, supra, was in reality a mere settlement and not an actual trial required by the No-action Clause [7] of the policy. Fearing that Ranallo v. Hinman Bros. Const. Co., D.C.Ohio, 49 F.Supp. 920, affirmed Buckeye Union Casualty Co. v. Ranallo, 6 Cir., 135 F.2d 921, certiorari denied 320 U.S. 745, 64 S.Ct. 47, 88 L. Ed. 442, establishes for Ohio too loose a practice or that Section 9510-4 of the Ohio Code of 1948 may give an absolute statutory right to a judgment creditor to proceed directly against the underwriter, it speeds swiftly to Dallas, Texas, to obtain the benefit of Wright v. Allstate Ins. Co., Tex.Civ.App., 285 S.W. 2d 376, error refused, NRE, while carefully avoiding San Antonio, the situs of its home office, because of Great American Indemnity Co. v. McMenamin, Tex. Civ.App., 134 S.W.2d 734, writ of error dismissed, correct judgment, which it classes along with Ranallo. United asserts that the testimony [8] of Enslen's

---

**7.** "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company * * *."

**8.** The attorney, over objection, testified substantially that the amounts fixed by the Court and from which the defendant stated it would not appeal, "came as the result of long negotiations with the attor-

(Standard's) Ohio counsel, inferentially rejected by the Court below as conclusions purporting to alter the judicial record of a judgment after trial, shows that this was but a voluntary settlement.

Both Ranallo and McMenamin indicate strongly that if, in good faith, the ultimate decision is left to the Judge, if it is he who, on evidence offered, must determine whether judgment goes for plaintiff or defendant, and who then must fix the amount of the award, it is not the less adversary if counsel states that no appeal will be taken if judgment does not exceed an indicated amount. But we need not determine either the rule of conflicts or substantive law. For United, having breached, as we hold, its unconditional contractual obligation to defend, cannot hold the assured (or those deriving through him) to performance of a contract term that envisages a continuation, not repudiation, of mutual obligations. So long as there is no fraud or collusion wrongfully destroying or impairing the insurer's rights, repudiation of the insurer's duty to defend excuses [9] compliance by the assured (named or under the Omnibus) with the No-action Clause. The assured at that stage is entitled to handle the claim as would a prudent uninsured person.

And this seems a wise and fair result. For the contrary would mean that, to protect the defaulting insurer against improvident settlements not controlled by it, the assured, left in lonely isolation facing the damage claimants, would have to expose his whole fortune to the risk [10] of exorbitant jury verdicts with only the hope that some Court in some state would sometime hold, see Maryland Casualty Co. v. Southern Farm Bureau Casualty Insurance Co., supra, that some insurer was liable.

■ The interstate journey commences again, this time on United's Complaint of the Trial Court's refusal to join Standard as an involuntary plaintiff. United again departs Texas, this time for Ohio, not merely to seize onto Cleveland Paint & Color Co. v. Bauer, 155 Ohio St. 17, 97 N.E.2d 545, and see, Rosenfeld v. Continental Building Operating Co., D.C.Mo., 135 F.Supp. 465, which it deems favorable, but to flee from the whole Fifth Circuit to escape altogether our decision in Celanese Corp. of America v. John Clark Industries, 5 Cir., 214 F.2d 551, and see, Augusta Broadcasting Co. v. United States, 5 Cir., 170 F.2d 199, which holds that where, under a loan receipt substantially similar to that involved here, note 5, supra, the

---

neys for the plaintiffs and was reduced to the least amount we could get them to agree to * * *" and it was a "matter of agreement" between them "arriving at a compromise figure * * *."

9. 142 A.L.R. 812: "Where a liability insurer denies liability for a claim asserted against the insured, and refuses to defend an action therefor, it is generally held that the insured is released from a provision of the policy against settlement of claims without the insurer's consent and from a provision making the liability of the insurer dependent on the obtaining of a judgment against the insured * * *." It cites from Texas, United States F. & G. Co. v. Pressler, Tex.Civ. App., 185 S.W. 326. And see, Hardware Mutual Casualty Co. v. Schantz, 5 Cir., 186 F.2d 868; Gulf Portland Cement Co. v. Globe Indemnity Co., 5 Cir., 149 F.2d 196, certiorari denied 326 U.S. 743, 66 S.Ct. 56, 90 L.Ed. 444; Boutwell v.

Employers' Liability Assurance Corp., 5 Cir., 175 F.2d 597.

10. The imponderables are not restricted to contemporary extravagant generosity of damage suit juries which might wipe out a lifetime savings. They include perhaps a reverse application of vexing, legal questions troublesome and difficult to many courts on the ultimate liability of an insurer for amounts in excess of policy limits for failure, in the "defense," to settle within policy limits; e. g., whether the test is due care, Stowers Furniture Co. v. American Indemnity Co., Tex.Com.App., 15 S.W.2d 544, or good faith even though mistaken, American Fidelity & Casualty Co., Inc., v. Greyhound Corporation, 5 Cir., 232 F.2d 89; the time the right of action accrues, e. g., Linkenhoger v. American Fidelity & Casualty Co., Inc., 152 Tex. 534, 260 S.W.2d 884, and the like.

Court has sufficient control to assure full trial of all claims and defenses and a final judgment binding on all. United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171, then Fed.Rules Civ.Proc. rule 17, 28 U.S. C.A. does not compel the joinder of the person advancing the funds. If the purpose here was to contaminate the jury's mind, this decision is decisive, and if the purpose was to assert a common or liability-over, no harm could have come since this was fully presented and determined on Summary Judgment.

■ United, not yet out of defenses or fuel, takes us next to Kentucky, the place of execution and delivery of Standard's policy. This concerns its contention that Standard, if not liable solely as primary insurance, should share pro rata under the Other Insurance Clause (note 2, supra). While there it seeks the advantage of the Sixth Circuit's decision of a Kentucky controversy in New Amsterdam Casualty Co. v. Hartford Accident & Indemnity Co., 108 F.2d 653, 655, which perhaps holds that the phrase "other valid and collectible insurance" available to the insured refers to insurance then in force at the time of the issuance of the second policy. On this, and the fact that Standard's policy was issued prior to United's, it claims that the clause (note 3, supra) in Standard's policy that it "shall be excess insurance" could not apply as to insurance subsequently obtained.

To make this side trip more inviting to the Russoms and Critchfields to whom —as well as United—Kentucky is a place foreign to any dealings or occurrences, United asserts that no Texas case is available and there is "some degree of

confusion in Ohio decisions." We think these perambulations unnecessary and unfruitful for Kentucky (State Farm Mutual Auto Ins. Co. v. Hall, 292 Ky. 22, 165 S.W.2d 838), Ohio (Traveler's Indemnity Co. v. State Automobile Insurance Co., 67 Ohio App. 457, 37 N.E.2d 198; Aetna Casualty & Sur. Co. v. Buckeye Union Cas. Co., Ohio App., 105 N.E. .2d 568; Trinity Universal Ins. Co. v. General Accident, 138 Ohio St. 488, 35 N.E.2d 836) and Texas (Great American Indemnity v. McMenamin, supra) as do we (Continental Casualty Co. v. Suttenfield, supra; General Insurance Co. of America v. Western Fire & Casualty Co., supra) give effect to the plain meaning of the words "shall be excess over." At the time of the accident, at which time Enslen's rights attached, he had valid and collectible insurance as an additional assured under United's policy. Until that coverage was exhausted, Standard had no liability under its drive-other-car extension.[11]

This eliminates altogether the necessity of a slight detour back to Ohio which United was prepared to make if the Kentucky journey was a failure to assert that under Ohio cases, Maryland Casualty Co. v. Bankers Indemnity Insurance Co., 51 Ohio App. 323, 200 N.E. 849; Standard Surety & Casualty Co. of New York v. Metropolitan Casualty Co., Ohio App., 67 N.E.2d 634, Enslen (its own assured) was the guilty party so, as between it and Standard, "his" insurance (with Standard) was primarily liable.

■ Near the journey's end, we come finally to the contention that interest was recoverable only on those amounts adjudged to each plaintiff [12] within its policy limits and not, as held below, on the

11. See also 8 Appleman, Insurance Law and Practice, page 333; and three interesting articles by Coleman, Gorton and O'Kelley, respectively, January 1948, page 31; July 1949, page 190; October 1955, page 404, Insurance Counsel Journal, International Association of Insurance Counsel, concerning primary and excess coverage under "Other Insurance" clauses of automobile policies. The type of case we have is catalogued as Prorata v. Excess and the collected cases indicate an overwhelming acceptance of the general rule.

12. The difference arises as to Mrs. Russom's injuries. She recovered $20,000.00 in her own name; her husband recovered $5,000.00; the two, with costs, totaling $25,032.98. Under the policy, liability was limited to $10,000.00 for personal injuries plus $149.50 for property damage.

full amount ($25,032.98) of the Russom judgments from the date of the Ohio entry until United pays its portion.[13] Acknowledging that, at least as to this, there are no Texas, Ohio or Fifth Circuit cases, United has no place in particular to take us, but insists[14] that practically everywhere liability is restricted to interest on amounts within policy limits for which the insurer is liable. The District Court thought the words plain and unambiguous and following[15] two contrary cases and some insurance text writings, held that interest was recoverable on the full amounts.

We agree with the District Court. And for good reason. Payment of interest, as well as the obligation to defend, pay premiums on appeal bonds, pay expenses of insurer and assured in the investigation and defense of claims, are, by their nature, undertakings to pay sums over and above the policy limits frequently in substantial amounts which may, and often do, exceed the liability limits. Many of them bear only an accidental relation to the amount of the policy limits. Moreover, the policy,[16] categorically stating this, presumably recognizes that, since the almost exclusive direction and control of the defense of the claim is in the insurer's hands and the assured takes independent action toward settlement or disposition only at his peril, the accrual of interest on the whole claim (for items within the coverage) is, in the overall strategy of defense, but one of the expected costs and, as any other, is to be borne by the insurer.

The journey thus ends where it began—judgment against United on the jury verdict, which is

Affirmed.

13. The policy provides that the company shall:

"c. pay all expenses incurred by the company, all costs taxed against the insured in any such suit and *all interest* accruing after entry of judgment until the company has *paid*, tendered or deposited in court, *such part of such judgment* as does not exceed the limit of the company's liability thereon." (Emphasis supplied.)

14. United relies on Standard Accident Insurance Co. of Detroit, Mich. v. Winget, 9 Cir., 197 F.2d 97, 106, 107; Morgan v. Graham, 10 Cir., 228 F.2d 625; Sampson v. Century Indemnity Co., 8 Cal.2d 476, 66 P.2d 434, 109 A.L.R. 1162; Home Indemnity Co. v. Corie, 206 Misc. 720, 134 N.Y.S.2d 443, 446.

15. The cases were Wilkerson v. Maryland Casualty Co., D.C.Va., 119 F.Supp. 383, affirmed 4 Cir., 210 F.2d 245; Underwood v. Buzby, D.C.Pa., 136 F.Supp. 957, subsequently affirmed, 3 Cir., 236 F.2d 937.

The Court quoted from Appleman Automobile *Liability Insurance*, page 209: " 'The intention of the framers is quite clear. In addition to the policy limits, the company intends to pay * * * all interest accrued, even on that portion in excess of the policy limits. * * *' " [143 F.Supp. 796]

And see Risjord (General Counsel of Employers' Reinsurance Corporation), *Underwriting Intent*, 7 Federation of Insurance Counsel Quarterly 41 at page 47: "When the policy referred to *all* interest, the underwriters meant *all* interest on the judgment, whatever its size in relation to the policy limits.

"In three cases the companies persuaded the courts that where the judgment exceeded the policy limits the company was liable for interest on only that part of the judgment which was within the policy limits: Sampson * * * Winget * * * and Corie * * *. But in two other cases the argument was unsuccessful and the courts correctly held that the insurer was liable for the interest on the entire judgment. Underwood * * * and Wilkerson * * * The September 1, 1956 standard family automobile policy makes this point clear by stating the company is liable for 'all interest on the *entire* amount of any judgment.' " (Emphasis supplied.)

16. The Interest Clause, note 13, supra, is subsection (c) of "II Defense, Settlement, Supplementary Payments," the concluding paragraph of which provides:

"The amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liabilty of this policy."