34607, 34621. DRAKE *v.* GENERAL ACCIDENT, FIRE & LIFE ASSURANCE CORPORATION, LIMITED; and *vice versa.*

DECIDED MAY 27, 1953—REHEARING DENIED JUNE 12, 1953.

*James A. Branch, Thomas B. Branch, Jr.,* for plaintiff in error.
*Haas, Hurt & Peek, Newell Edenfield,* contra.

FELTON, J. The question for determination on the main bill of exceptions is whether there is sufficient evidence to authorize a jury to find that the plaintiff was using the loaned automobile with the "permission" of the insured within the meaning of the omnibus clause of the policy. Roy Drake, the plaintiff's husband, testified that he took his own automobile to J. L. Weddington, Jr., Inc., to have certain repairs made thereon. Upon learning that the repairs would take some time, he inquired of the company's agent if he might borrow one of the company's automobiles to use while his own automobile was being repaired. He further testified: "Regarding what was said on this occasion when I borrowed the '35 Chevrolet about me borrowing an automobile—there wasn't but a few words said. Something was said about I wanted the car fixed and couldn't get it fixed that day, and I said something about a car to use, and they said the service truck was out, it would be about 5 before it got back, and I told them that I couldn't wait that long, I wanted to get on back to the house, and he said, well, the only thing that they had was a '35 Chevrolet out on the sales lot and I could use that if I wanted to, and he turned around to one of the mechanics and said go out there and get Roy that Chevrolet, and he took and drove it up in the front door, and I got in it and came home, and he said, 'If you find anybody that wants to buy it for a hundred dollars while you have got it down there,' said, 'sell it to them.' I have told you substantially everything that was said at the time I borrowed the car. It was a conversation, as I would say, of less than five minutes, three or four or five minutes. Bill turned and walked off and was talking to somebody else on the job when I left. And I got in the car and came on home. . . Mrs. Drake used it [witness's automobile] the same way I would use it, for a family car. . . I did not tell Mr. Sewell [the insured company's agent] that the only thing I wanted to use the car for was to go home, go home from J. L. Weddington Company to my place of business, and home that night and back to pick up my car that was being repaired. . . I did not tell Bill Sewell I wouldn't let anyone drive it. I borrowed the car to use as I used my own car."

William F. Sewell, the insured's agent, testified in part: "I told Mr. Drake at first that we did not have a car, we were very short of cars at that time and didn't have anything that we could let him use, but Mr. Drake says that, come back and says—of course, he was a good customer—and said that he needed one awfully bad, that his place of business was at least a mile or more from his home, which I knew was true, and that he would not have any way to get home, that he closed his business around twelve or one o'clock at night and he didn't want to have to walk and carry his day's receipts with him. So I did tell him then that I did have an old '35 model Chevrolet back there, that, if that was all he wanted with it, I would let him have it to go home in and use it to go home in that night and come back to his work and come back to get his car when it was finished; if that was all he was going to use the car for, that I would let him have that particular car, and I didn't have any understanding that it would· be uséd for any other purpose than to go home. Mr. Drake did not tell me that he wanted the car for the use of himself and his family. while his car was being repaired. The family wasn't mentioned in it. It was just to use it. He was to use it just to go back to his place of business, and when he closed up that night to go home and carry his day's receipts and come back to work in it the next day."

The testimony for the plaintiff is to the effect that no restrictions or limitations were put on the use of the loaned automobile, and that the plaintiff's husband was given general use of the automobile. On the other hand, the testimony for the defendant is to the effect that the automobile was loaned for an expressly restricted purpose, that of going between Mr. Drake's home and his place of business. The evidence presented a jury question on this issue. If the jury believed the plaintiff's version, they would have been authorized to find that the plaintiff was using the loaned automobile with the "permission" of the insured within the meaning of the omnibus clause in the policy. The plaintiff's husband borrowed the automobile to use while his own automobile was being repaired. The insured knew that the plaintiff had use of and did use her husband's automobile. The insured's agent testified: "I did know that Mrs. Drake drove their automobile. She had been in and out of our place

numbers of times making purchases of various things." "Permission" as used in an omnibus clause such as the one here under consideration means either express or implied permission. *Hodges* v. *Ocean Accident &c. Corp.*, 66 *Ga. App.* 431, 436 (18 S. E. 2d 28); Maryland Casualty Co. *v.* Williams, 184 Fed. 2d 983. Where the plaintiff's husband took his automobile to the insured for repairs, and the insured loaned him an automobile to use while his automobile was being repaired, and the insured did not restrict or limit the use of the loaned automobile but gave the plaintiff's husband general use of such automobile, and the insured knew that the plaintiff used her husband's automobile, there arose an implied permission for the plaintiff to use such loaned automobile for the purposes for which she had used her husband's automobile. See Harrison *v.* Carroll, 139 Fed. 2d 427, 429 (7); Aetna Life Ins. Co. *v.* Chandler, 89 N. H. 95 (193 Atl. 233). This is not an application of the "first instance permission" doctrine which was held not to be applicable in Georgia in *Hodges* v. *Ocean Accident &c. Corp.*, and Maryland Casualty Co. *v.* Williams, supra. We are not holding that any person to whom the plaintiff's husband could have loaned his own automobile had implied permission to use the loaned automobile, but that, under the circumstances of this case, the plaintiff had such implied permission if the jury believed the plaintiff's evidence rather than that of the defendant.

The defendant makes the following point: "Now we concede that the testimony of Drake makes a conflict about this evidence insofar as it involves what he (Drake) said to Sewell. For example, when later confronted with a signed statement Drake undertook to repudiate what he had allegedly said to Sewell, but he never denied what Sewell, the lender, said to him, and this of course is the vital part of the case. It therefore stands undisputed in the record that the lender told the borrower at the time of the loan that he would let him have the car 'to go home in that night and come back to his work and come back to get his car when it was finished, if that was all he was going to use the car for. . .'" The point is not well taken. In testifying as to the conversation between Drake and Sewell, Drake did not relate as part of the conversation that Sewell told him that he could use the loaned automobile if all he

wanted to use it for was to travel between his home and his place of business. Drake further testified: "I have told you substantially everything that was said at the time I borrowed the car." Such testimony, if the jury believed it rather than that of Sewell, would have authorized the jury to find that Sewell did not restrict the use of the loaned automobile.

The issues of the case presented questions for a jury's determination, and the court erred in directing a verdict for the defendant.

The cross-bill of exceptions complains that the court erred in overruling the general demurrer to the petition. The petition alleged a justiciable issue as to the rights sought to be declared, and therefore stated a good cause of action for a declaratory judgment as against a general demurrer. *Georgia Casualty &c. Co.* v. *Turner,* 87 *Ga. App.* 618 (74 S. E. 2d 665) ; *Parks* v. *Jones,* 88 *Ga. App.* 188 (76 S. E. 2d 449).

The court erred in overruling the amended motion for a new trial in case Number 34607.

The court did not err in overruling the general demurrer to the petition in case Number 34621.

*Judgment reversed on the main bill of exceptions and affirmed on the cross-bill. Sutton, C. J., and Worrill, J., concur.*