35560.   MARYLAND CASUALTY COMPANY *et al. v.*
UNITED STATES FIDELITY & GUARANTY CO. *et al.*

636

Decided March 2, 1955—Rehearing denied March 17, 1955.

*T. J. Long, Ben Weinberg,* for plaintiffs in error.

*Abbott & Abbott, Randall Evans, Jr., Roy Black,* pro se, contra.

Townsend, J. ■ The evidence is undisputed that the plaintiff's named insured, Roy Black, lent his truck to his father-in-law, Kermit Faglier, in exchange for the latter's Chrysler automobile, and authorized a finding that the exchange was for the latter's benefit. The parties agreed to the temporary exchange on a Thursday, in the hospital room of Kermit's wife (Black's mother-in-law) in Louisville, Georgia, some 45 or 50 miles from Kermit's home in Augusta, the exchange to be made at that place on the following evening. On Friday night Kermit did not feel well enough to drive from Augusta to Louisville, and induced

his brother, Astor William, to drive his automobile to the hospital. The exchange having been agreed upon, little was said between Black and Kermit Faglier at the hospital until Black rose to leave, when Astor William handed him the keys to Kermit's car. Then, according to the positive testimony of Kermit and Astor William, Black said to the latter, "My keys are in the truck." Black himself testified that he either made this statement to Astor William or that he handed him the keys. Black also testified that he intended for the truck to be used by Kermit in returning to Augusta and for other named purposes; that the two men had exchanged cars in the past; that he gave Kermit permission to "go ahead and do what he wanted to do with it, just as he would use his own car"; and that, as to a previous exchange under a similar understanding: "He let me have his car to use as I wanted to. And I left my pickup with him to put valves in it, and if he wanted to, you know, go down to the store or anywhere, it was all right. It was all right if he wanted to use it. I had his car and he had to have something to go in. So I would permit him to use it as he saw fit." Black's use of Kermit's automobile included allowing his wife to drive it. No express authorization was given by Black to Astor William to drive the truck, nor was any restriction placed on its operation, either when Black told Astor William where the keys were or at any other time. The Fagliers left after Black had gone, Astor William driving, and an upset occurred on the road between Louisville and Augusta. Kermit was injured and filed an action for damages against Astor William and Black jointly.

The policy of the plaintiff insurance company contains the following omnibus provision: "Definition of insured. With respect to the insurance for bodily liability and property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile . . . provided the actual use of the automobile is by the named insured or with his permission." Accordingly, the sole question is whether the facts above stated constituted "permission" for Astor William Faglier to drive the Black automobile, since, if so, the plaintiff would be liable to defend him as an "insured" under the terms of its policy, and, if not, it would have no obligation to do so.

Permission may be either express or implied, but the term means that the car must be driven in accordance with a use stated or intended at the time the bailment is made, and at a time or place or for a purpose authorized by the insured. *Hodges v. Ocean Accident &c. Corp.*, 66 *Ga. App.* 431 (18 S. E. 2d 28). The time, place, and purpose of the expressly intended use— that is, to enable Kermit Faglier to return from Louisville to Augusta—appears here at the time of the wreck; but it is contended that the manner of the use was not authorized, in that Roy Black testified that he did not authorize Astor William to drive and did not understand that he was to be the operator of the vehicle. A finding is therefore demanded that there was no *express* authorization that Astor William drive and operate the vehicle, but this is not determinative of implied authorization. The latter may arise where a garage repairman lends a substitute automobile to a customer without restriction, to be used in place of a family car which the repairman knows the customer's wife was accustomed to drive. *Drake v. General Accident &c. Ins. Co.*, 88 *Ga. App.* 408 (77 S. E. 2d 71). It arises where a father lends his automobile to his son for the purpose of taking a trip with two other boys, and makes no restriction as to who shall operate the vehicle. Glens Falls Indemnity Co. *v.* Zurn, 87 Fed. 2d 988. It may arise when an employer turns a vehicle over to an employee, and the latter permits a co-employee to drive, provided it is used within the scope of the master's business; but there is no permission, express or implied, where the actual use to which the vehicle is put is one forbidden under the terms of the bailment. *Western Casualty &c. Co. v. Strozier*, 67 *Ga. App.* 41 (19 S. E. 2d 433).

The trial court here, in entering judgment, found as a fact that the statement made by Roy Black at the time he left the hospital after the exchange of automobiles had been agreed upon, to the effect that the keys were located in the truck, was made to no person in particular. We think that this finding on the part of the trial judge was erroneous, and that doubtless he was misled thereby into deciding against the theory of implied permission. The evidence demanded a finding that this statement of Roy Black, if made at all, was made to Astor William. Two of the four witnesses present testified positively to that effect. The wife

of Roy Black did not remember the conversation. Roy Black, who knew in his own mind better than anyone else whom he meant to have the keys to his truck, stated that he either handed the keys to Astor William or told *him* where they were. We think this demands a finding that Roy Black thereby gave Astor William permission to drive his brother from Louisville to his home in Augusta, one of the uses for which the truck had been loaned to Kermit. Other testimony, to the effect that Roy Black meant for Kermit Faglier to use the truck as he would his own car; that he used Kermit's car in that manner when the parties exchanged vehicles; that Mrs. Black had driven the Faglier vehicle on previous exchanges, together with the undisputed testimony that Black had intended for the automobile to be used for Kermit's return transportation from the hospital, constitutes further circumstances requiring this finding. The conduct of Roy Black at the time of the exchange was therefore such that it constituted implied authority to Astor William to drive the truck in the absence of any express restrictions to the contrary. See, in this connection, also 5 A. L. R. 2d, Annotation, pp. 601, 648.

■ Under the terms of this policy, the plaintiff insurer is obligated "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . sustained *by any person* [emphasis added] caused by accident and arising out of the ownership, maintenance or use of the automobile." No exclusion appears in this policy (as, for example, in Frye *v.* Theige, 253 Wis. 596, 34 N. W. 2d 793) eliminating liability for the injury of a person insured under the contract. As seen above, Kermit Faglier became an insured by express permission, and Astor William became an insured by implied permission, of the named insured, Roy Black. As such, in the absence of such an exclusion clause, each became an insured under the policy, with the same right to enforce the provisions thereof as to payment of sums which either became legally obligated to pay as damages resulting from the injury of any person. The provision means "that the insurance company agrees to pay on behalf of the insured, whether it be the named insured or some other person operating the named insured's automobile with his permission, all sums which such insured shall become legally obligated to pay as damages to some other party."

*Bailey* v. *Metropolitan Casualty Ins. Co.*, 89 *Ga. App.* 53, 54 (78 S. E. 2d 626). Although there are cases to the contrary, and although this exact question has not been decided in Georgia, it appears to us that the better weight of authority is to the effect that one who, by reason of an extended-coverage clause in an automobile liability insurance policy, becomes an "insured" is entitled to all of the protection afforded to the original, or named, insured, and for this reason is entitled to indemnity against liability resulting from bodily injury sustained in an upset arising out of the actual use of the automobile with the permission of the named insured, even though the person injured is himself an "insured" within the meaning of the policy provisions. See, to this effect, Hardtner *v.* Aetna Casualty &c. Co. (La.) 189 So. 365; Howe *v.* Howe, 87 N. H. 338 (179 Atl. 362); Bachman *v.* Independent Indemnity Co., 214 Cal. 529 (6 Pac. 2d 943).

The trial court erred in denying the motion for a new trial.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*