44782.   HEMPHILL et al. v. HOME INSURANCE
COMPANY et al.

ARGUED SEPTEMBER 3, 1969—DECIDED MARCH 6, 1970—

326

*Ross & Finch, Claude R. Ross, Charles E. McCranie,* for appellants.

*Neely, Freeman & Hawkins, Thomas H. Harper, Jr., Lokey & Bowden, Hamilton Lokey, Milton Harrison, Martin, Snow, Grant & Napier, Cubbedge Snow, Jr., Cubbedge Snow, Smith & Harrington, Will Ed Smith,* for appellees.

EBERHARDT, Judge. The issue in this case is whether Daugherty was afforded liability insurance coverage by either Phoenix[1] or Universal while operating the 1965 Chevrolet at the time of

---

[1] Plaintiffs agree, in their brief and in oral argument before this court, that the district court judgment, holding that no liability coverage was afforded by Phoenix' policy, is not binding as to the uninsured motorist carriers since they were not parties to that proceeding, and that these carriers are free to assert defensively that Phoenix' policy did provide coverage notwithstanding the district court judgment.

the collision with the automobile occupied by plaintiffs. If he was afforded liability coverage by either, then the uninsured motorist coverage afforded by the other defendant companies would be unavailable to plaintiffs.[2] See *Code Ann.* § 56-407.1.

Since we conclude that the trial court was correct in holding that the Phoenix policy did provide liability coverage, we find it unnecessary, as did the trial court, to deal with other defensive assertions made by the uninsured motorist carriers. The trial court did, however, rule that no liability coverage was afforded by Universal's policy and sustained its motion for summary judgment as well as its motion to dismiss a cross claim filed against it by Georgia Farm Bureau. In view of our conclusion that Phoenix' policy provided liability coverage to Daugherty, rendering any uninsured motorist coverage of plaintiffs unavailable, it is unnecessary to consider the contention of the uninsured motorist carriers that Universal's policy also provided coverage; and, since plaintiffs are in accord with the trial court's ruling with respect to Universal and have expressly abandoned any claim against it, it is unnecessary to review this ruling from the plaintiff's standpoint. It would, of course, be necessary to consider whether there was coverage under Universal's policy if, for any reason, we concluded that there was no coverage under the Phoenix policy; for coverage under either would render the uninsured motorist coverage unavailable—but we do not reach that problem.

The issues with respect to Phoenix' policy are (1) whether Daugherty was an omnibus permittee and thus an insured under the liability policy issued to Father Scholz; (2) whether the 1965 Chevrolet which Daugherty was driving at the time of collision with plaintiffs' automobile was a "temporary substitute automobile" within the meaning of the policy; and (3) whether Daugherty's operation of the automobile at the time of the collision was within the scope of Father Scholz' and Walker's permission.

---

[2] Plaintiffs concede that the judgments of the wives of the male plaintiffs for loss of consortium are not collectible in any event from the uninsured motorist carriers.

1. Phoenix' policy provides that with respect to the "owned automobile" (which is defined by the policy as including a "temporary substitute automobile"), "The following are insureds under Part I [liability]: (1) the named insured [Father Scholz] and any resident of the same household, (2) *any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission. . ."*

It is undisputed that Father Scholz turned the Chevelle over to Son Scholz for general transportation purposes without restriction as to use, except that Son Scholz was not to let anyone else drive it. The initial question is whether, under these circumstances, Daugherty. was "using such automobile with the permission of" Father Scholz.

In *Strickland v. Ga. Cas. &c. Co.*, 224 Ga. 487, supra, the Supreme Court had before it an omnibus clause which included as an additional insured "any person while using the automobile . . . , provided the actual use of the automobile is with the permission of [the named insured or his spouse]." In that case the named insured allowed Carter, one of his employees, to use his vehicle for certain purposes but had forbidden Williams, another employee, to drive it. At the time of the collision Williams was operating the vehicle with Carter as a passenger. The Supreme Court stated: "The question is raised as to whether or not coverage under the omnibus provision of the policy is extended where the vehicle is being used for a permitted purpose by a driver expressly prohibited from operating it. In our view the answer must be determined by the meaning of the words 'actual use' as contained in the omnibus clause." Equating "actual use" with "use," the court held: "The word 'use' has two meanings which are pertinent to this inquiry. In one sense it relates to the *operation* of the vehicle. In the other sense it relates to the *purpose served* by the vehicle. Appellee contends that the policy requires *permission* of the named insured *in both senses* before its coverage is extended. The appellant contends that the policy only requires *permission for the purpose to be served*. We hold that the contention of the appellant is correct." P. 489. (Emphasis supplied).

The Supreme Court thus clearly held that the permission required by the omnibus clause under consideration there related only to the purpose for which permission was given and not to the identity of the operator, and that coverage was extended under the omnibus clause provided the vehicle was being used for a permitted purpose by the "second permittee" notwithstanding the fact that he not only had no permission to operate it but had been expressly prohibited from doing so. Whether we agree with this ruling by the Supreme Court is irrelevant; we are bound by it, and we followed *Strickland* in *Cotton States Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 118 Ga. App. 451 (164 SE2d 262), where we held: "Where the owner of a motor vehicle loaned it to another, a third person was using the vehicle with permission of the owner within the meaning of the omnibus clause of the owner's automobile liability insurance policy provided it was being used for a permitted purpose, regardless of whether the third person had the owner's express or implied permission to drive."

The language of the omnibus clause in *Cotton States* was "any other person using such automobile, provided the actual use thereof is with the permission of the named insured, and is within the scope of such permission." The language in *Strickland* was "any person while using the automobile . . . , provided the actual use of the automobile is with the permission of [the named insured]." The language under consideration here is "any other person using such automobile with the permission of the named insured." The question, then, is what "use with permission" means; and, under the authority of *Strickland* and *Cotton States,* we hold that the requisite permission relates only to the purpose for which permission was given and not to the identity of the operator. Hence Daugherty was an omnibus permittee and an additional insured if the automobile was being used for a permitted purpose at the time of the collision, regardless of whether he had Father Scholz' express or implied authorization to drive it.

Plaintiffs contend, however, that the second clause of the omnibus provision in Phoenix' policy distinguishes it from the omnibus clauses in *Strickland* and *Cotton States,* dictating a

different result. It is urged that this clause requires that the "driving or operation of the automobile must be with the permission of the named insured"—i.e., permission relates to the identity of the operator. If the clause so read, there might be merit in this contention. However, the clause does not require that the actual operation must be *with* the permission of the named insured, but only *within the scope* of such permission. This is no more than was required in *Strickland* and *Cotton States*, for the determining question in those cases was whether the automobile was being operated for a permitted purpose. If so, then it was being operated with the permission of the named insured (and necessarily within the scope of such permission), no matter who was operating it.

*Wynn v. State Farm &c. Co.*, 118 Ga. App. 421 (164 SE2d 153), cited by plaintiffs, is distinguishable on at least three grounds. In the first place, the omnibus clause there provided that both the actual use *and the operation* of the automobile must be *with* the permission of the named insured and within the scope of such permission. Thus the requisite permission related to the identity of the operator as well as to the purpose to be served. Secondly, the purpose for which permission was granted was for the first permittee to drive the named insured's front-wheel-drive automobile around the block to "see how it handles"; and it is clear that the operation of it by a third person would not be for the permitted purpose and hence not within the scope of the named insured's permission. Additionally, *Wynn* did not consider the "permitted purpose" rationale upon which *Strickland* and *Cotton States* rest, but instead held that under the narrow scope of permission granted the first permittee he had no "implied permission" to allow another to drive, a distinctly different theory.

We hold, then, that Daugherty was an additional insured under Phoenix' policy, provided he was operating the automobile for a permitted purpose and that it was a "temporary substitute automobile" within the meaning of the policy.

2. The next question presented is whether the 1965 Chevrolet was a "temporary substitute automobile" within the meaning of Phoenix' policy. If so, then by policy definition it would be an

"owned automobile" to which the omnibus clause, providing for additional insureds, would be applicable.

The policy defines "temporary substitute automobile" as "any automobile . . . not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile . . . when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." Plaintiffs contend that Walker authorized only Son Scholz to use the automobile and no one else, and the question arises again as to the meaning of "use with permission." Under *Strickland* and *Cotton States,* supra, we hold that the permission required by this phrase relates only to the purpose for which permission was given by Walker and not to the identity of the operator. Hence, if Daugherty was using the automobile for a permitted purpose, discussed infra, he was using it with the permission of the owner regardless of whether he had express or implied authorization to drive it.

Plaintiffs next contend that only the named insured can authorize the procurement of a substitute vehicle and grant permission for its use so as to bring that use within the protection of the policy, citing Harte v. Peerless Ins. Co., 123 Vt. 120 (183 A2d 223) and Grundeen v. U. S. Fidel. &c. Co., 238 F2d 750 (CA 8). Thus it is argued that since use of the 1965 Chevrolet was arranged for in an understanding between Walker and Son Scholz without the knowledge or consent of Father Scholz, the Chevrolet could not be a "temporary substitute automobile" within the meaning of the policy.

There is some merit in this contention. The omnibus clause, requiring permission of the named insured for use of "such" automobile, is applicable to the "owned automobile"; and "owned automobile" is defined as including a "temporary substitute automobile." Thus the omnibus clause might well be read as "any other person using such [temporary substitute] automobile with the permission of the named insured." On the other hand it might be argued that since the definition of "temporary substitute automobile" itself requires only the permission of the owner of the substitute, the permission of the named insured is not required under the principle of inclusio unius est exclusio alterius.

It is not necessary to decide this question, however, for assuming that permission of the named insured is required, the Harte and Grundeen cases are distinguishable on the basis of implied permission. Those cases did not consider this question, the scope of permission involved there with regard to the described automobile being nonexistent or narrow. In the Harte case the described automobile was "out of commission" and had been parked in front of the named insured's house for some two months when her son became involved in a collision while driving a borrowed vehicle. There was no evidence at all to show that the son had ever had permission to use the described automobile in any manner. Hence there was no occasion for the Vermont court to consider whether permission to use the described automobile was broad enough to include the substitution of another in its place. In the Grundeen case the employee of the named insured only had permission to use the employer's described truck in the course of his employment as salesman. He had no broad and unfettered dominion over the truck, unrestricted as to time or circumstance, as distinguished from the situation in the case at bar. Thus, as stated in the district court opinion: "It is conceded by all parties that [the employee's] use of his own Oldsmobile automobile was not with the permission, either express *or implied,* of the named insured, Grundeen. . ." U. S. Fidel. &c. Co. v. Grundeen, 138 FSupp. 498, 503 (D.N.D.) (Emphasis supplied).

In the case at bar Scholz had the use of the Chevelle for an indefinite period of time for any purpose he saw fit. As the trial court observed, the duration of use would imply that repair or servicing might reasonably be required while the Chevelle was in Son Scholz' possession and control. This being so, Son Scholz had implied permission to procure a substitute automobile while the Chevelle was temporarily withdrawn from service. "The term 'permission' is universally held to mean either express or implied permission." *Hodges v. Ocean Acc. &c. Corp.,* 66 Ga. App. 431, 435 (18 SE2d 28). Accord: *Drake v. General Acc. &c. Assur. Corp.,* 88 Ga. App. 408 (77 SE2d 71); *Maryland Cas. Co. v. U. S. Fidel. &c. Co.,* 91 Ga. App. 635 (86 SE2d 801). The statement of Father Scholz in his affidavit that "I am sure

that if I had been consulted about a substitute car being provided, I would have refused to undertake the risk attached and refused to let my son accept the substitute" is a hypothetical, speculative, and conjectural conclusion. *Patterson v. Cotton States Mut. Ins. Co.*, 221 Ga. 878 (148 SE2d 320); *Bankers Health &c. Ins. Co. v. Fryhofer*, 114 Ga. App. 107, 112 (150 SE2d 365).

Our holding that the 1965 Chevrolet was a "temporary substitute automobile," provided it was being used for a permitted purpose, is in accord with the theory of the coverage afforded by the "substitute" clause. As stated in *Cotton States Mut. Ins. Co. v. Lee*, 119 Ga. App. 293, 294 (166 SE2d 907): "The purpose of a 'substitution' provision is, of course, to be determined from its own language. But generally, as pointed out in 34 ALR2d 936, 947, citing the case of Lloyds America v. Ferguson, 116 F2d 920, the purpose of a substitution clause is not to narrowly limit or defeat coverage, but to make the coverage reasonably definite as to the vehicle the insured intended normally to use, while at the same time permitting operations to go on should the particular vehicle named be temporarily out of commission." The provision is not to be narrowly construed as limiting coverage but will be construed in a manner to make the policy reasonably definite as to the vehicle covered and, at the same time, afford continuous protection at a premium rate fair to both insured and insurer. Canal Ins. Co. v. Paul, 51 Tenn. App. 446 (369 SW2d 393). The purpose is not to defeat liability but reasonably to define coverage by limiting the risk to one operating vehicle at a time for a single premium. Nelson v. St. Paul Mercury Ins. Co., (S. D.) 153 N. W. 2d 397. See also Allstate Ins. Co. v. Roberts, 156 Cal. App. 2d 755 (320 P2d 90); Farley v. American Auto. Ins. Co., 137 W. Va. 455 (72 SE2d 520); Lumbermen's Mut. Cas. Co. v. Harleysville Mut. Cas. Co., 367 F2d 250 (CA 4).

We hold, then, that the 1965 Chevrolet being driven by Daugherty was a "temporary substitute automobile" within the meaning of Phoenix' policy provided it was being used for a permitted purpose.

3. We now come to the question of whether Daugherty's op-

eration of the automobile at the time of the collision was within the scope of Father Scholz' and Walker's permission. As previously seen, the answer to this question depends upon whether the automobile was being used for a permitted purpose.

The purpose for which Father Scholz furnished the Chevelle to Son Scholz, and gave permission for its use, was to furnish general transportation to the son for an indefinite period. There were no restrictions that the son could use the automobile only for particular purposes or at particular times. At the time of the collision involved here Daugherty was operating the substitute automobile while Son Scholz was a passenger. Thus Daugherty was operating the automobile for the permitted purpose—to furnish transportation to Son Scholz. While both Son Scholz and Daugherty died as a result of the collision and were not available to testify regarding the particular purpose of the trip, the record otherwise shows that they were expected to come from Fort Stewart to Jacksonville the weekend of the fatal collision. Hence we hold that Daugherty's operation of the automobile was for a purpose permitted by Father Scholz and was within the scope of his permission, and Daugherty was thus an additional insured under the omnibus clause of Phoenix' policy.

As for Walker's permission to use the 1965 Chevrolet, this clearly applies to the use of the Chevrolet as a substitute in place of the Chevelle, which was under repair. Since the Chevrolet was being used for a purpose which would have been served by the Chevelle except for its withdrawal from normal use because of its repair, the Chevrolet was being used for a permitted purpose and hence was being used with the permission of the owner, Walker. Therefore we hold that the Chevrolet was a "temporary substitute automobile" within the meaning of Phoenix' policy.

4. From the rulings in the preceding division we hold, as did the trial judge, that Phoenix' policy provided liability coverage to Daugherty on the occasion in question.

5. While all counsel in this case conceded, both by brief and in oral argument that the Federal district court judgment is not and cannot be binding on those who were not parties to the proceeding in that court, and that the uninsured motorist car-

riers are thus free to raise the defense of coverage by Phoenix, the question is raised in a dissent to this opinion. Counsel concede, too, that the cases of *Strickland v. Ga. Cas. &c. Co.*, 224 Ga. 487, supra, and *Cotton States Mut. Ins. Co. v. Lee*, 119 Ga. App. 293, supra, were not brought to the attention of the Federal court.

The question raised in the dissent is as to the effect of the Federal court judgment in the light of language found in the policies of the uninsured motorist carriers providing coverage in situations where there is a "liability insurance policy applicable at the time of the accident but the company writing the same has . . . legally denied coverage."[3] Phoenix had a liability policy which, under the holdings in *Strickland* and *Cotton States* was applicable. Thus, the only question is whether it had *legally* denied coverage in obtaining the declaratory judgment in the Federal court.

If there has been a *legal* denial of coverage by Phoenix the uninsured motorist coverages would be effective—unless other liability coverage is applicable under Universal's policy to Walker Chevrolet Company.

We do not see how coverage can be said to have been *legally* denied unless the denial is, under applicable law, *legally sustainable*. Such was the holding in Motor Vehicle Accident &c. Corp. v. Malone, 16 N. Y. 2d 1027 (265 NYS2d 906, 213 NE2d 316). Under the holdings in *Strickland* and *Cotton States*, Phoenix' denial of coverage was not legally sustainable. It could have been defeated in the Federal court had the defendants in the declaratory judgment action (plaintiffs in the damage actions) urged the *Strickland* and *Cotton States* cases or called them to the attention of the Federal court. Unquestionably the Federal court judgment could have been reversed under the holding of the Supreme Court of the United States in Erie Rail-

---

[3]The language in the policies is substantially identical with the provision in *Code Ann.* § 56-407.1 (b) (ii) defining an uninsured vehicle, inter alia, to be one as to which "there is such [liability] insurance in existence but the insurance company writing the same has legally denied coverage thereunder."

road Co. v. Tompkins, 304 U. S. 64 (58 SC 817, 82 LE 1188, 114 ALR 1487), if there had been an appeal of the judgment.

It would be an anomaly, contrary to our whole jurisprudential system, if it were to be held that Phoenix could, by this action, bind the uninsured motorist carriers who were not parties to the action, and thus shift its liability to their shoulders. It would likewise be an anomaly if the plaintiffs in the damage actions could, by allowing the erroneous judgment to be entered and failing to appeal it, raise the limits of available liability insurance by releasing Phoenix and fastening liability on their own uninsured motorist carriers when these had not been parties, had not been lawfully served or notified of the pendency of the action, and had not had their day in court. The law was never meant to bring about or even to permit that result.

Nor is it of any significance that the trail court recited in its judgment of May 21, 1969, that it had previously held on February 18, 1969, the Federal court judgment to be res judicata as to those who were parties to that action, for in the same judgment the trial court holds, as we do, that there was applicable coverage under the Phoenix policy.

There is no appeal of the prior judgment, and there is no enumeration of error raising any question as to it. The appeal is as to the judgment entered May 21, denying the plaintiffs' motions for summary judgment and granting the motions of defendants. That is the only judgment which is the subject matter of this appeal and of the enumerations of error.

The case of Motor Vehicle Acc. Indemnification Corp. v. National Grange Mut. Ins. Co., 19 N. Y. 2d 115 (224 NE2d 869), cited in the dissent, in no wise requires a different result here. On the contrary, the holding was that since the uninsured motorist carrier in a former declaratory judgment action in that case had not been a party to the action "it would be both unreal and unjust to say that the validity of National's disclaimer was litigated between parties having an adversary interest in the first suit. . . We hold, therefore, that res judicata is no defense to this suit for a declaratory judgment and that the courts below acted properly in denying defendant's motion for summary judgment [which urged res judicata as the basis of the motion]."

Whether the judgment of the Federal district court is res judicata as between the parties to that action, it can not serve as the basis for the motion for summary judgment made by the plaintiffs who had secured judgments in their damage actions, and these were properly denied, nor can it be urged in defense against the motions of the uninsured motorist carriers, particularly when done for the first time in this court. *Duncan v. Pope*, 47 Ga. 445 (5). And see *Fenn v. Ware & Owens*, 100 Ga. 563, 566 (28 SE 238).

Having concluded that there was an applicable liability insurance coverage, and that there was no legal denial thereof by Phoenix, it follows that under neither the terms of the policies nor of the statute was there any uninsured motorist coverage applying to the judgments which plaintiffs in the damage actions had obtained. The judgment of the trial court is

*Affirmed. Bell, C. J., Jordan, P. J., Hall, P. J., Quillian and Whitman, JJ., concur. Pannell, Deen and Evans, JJ., dissent.*

DEEN, Judge, dissenting. It is unfortunately possible that in a collision between two automobiles, where the parties between them hold seven standard automobile insurance policies, and where the liability of the tortfeasor has been legally adjudicated and is unquestioned, that there is still no insurance coverage applicable. That is the effect of the decision in this case, but under the circumstances set forth I question the conclusion reached.

I agree with the first three divisions of the majority opinion, the ultimate effect of which is a holding that the tortfeasor Daugherty, driving an automobile which was a temporary substitute automobile for the automobile insured by Scholz with Phoenix of Hartford Insurance Company, was in fact entitled to have the protection of that insurance. This court may properly adjudicate that Daugherty ought to be protected by Phoenix, and that to the extent of coverage Phoenix ought to pay the judgments awarded plaintiffs against Daugherty, but what this court cannot do is to further adjudicate that there is a legal liability on Phoenix to pay. The reason for this is simply: Phoenix has already brought a declaratory judgment against the

tortfeasor Daugherty's estate and the judgment plaintiffs in the tort action in the Federal district court and has obtained a valid and subsisting judgment of that court that there is not liability coverage afforded by its policy as to these plaintiffs. As the trial court in the present case correctly stated in dismissing Phoenix as a party defendant in this action: "The motion of Phoenix to dismiss as to the plaintiffs is granted as this court finds that as to the plaintiffs the action of the U. S. District Court, Southern District of Georgia in rendering summary judgment on October 10, 1968, for Phoenix against plaintiffs in a declaratory judgment proceeding regarding coverage under the liability policy in question is res judicata." Thus, both the State and the Federal court, while differing on the proper interpretation of the Phoenix policy, have held that there is no coverage by Phoenix on the judgments held by these plaintiffs against these defendants—the latter based on summary judgment and the former on res judicata.

At this point, in my opinion, the uninsured motorist insurance provided for several of the plaintiffs by their own policies of automobile insurance with State Farm, Georgia Farm Bureau and Home Insurance Companies, comes into play. For example, the plaintiff Wright, who holds an unsatisfied judgment in the sum of $67,249, is insured by Home Insurance Company, whose policy contains the provision: "The company will pay all sums which the insured . . . shall be legally entitled to recover as damages because of bodily injury sustained by the insured caused by accident and arising out of the ownership . . . or use of such uninsured highway vehicle." The term "uninsured highway vehicle" is defined, among other things, to mean one "with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but *the company writing the same denies coverage* thereunder."

This court holds that the Phoenix policy was applicable to the temporary substitute automobile driven by the tortfeasor Daugherty at the time of the accident. Phoenix wrote the same, and has very successfully denied coverage thereunder since it obtained a declaratory judgment of nonliability which created a res judicata situation and led to the dismissal of Phoenix

as a party defendant in the present litigation. There is accordingly no coverage by Phoenix on Wright's judgment and the judgment debtor is an "uninsured motorist" under Wright's policy.

It should be observed that the remaining policies with uninsured motorist coverage contain identical language as to their insureds with the exception that the relevant definition of "uninsured automobile" is where "there is a bodily injury . . . liability insurance policy applicable at the time of the accident but the company writing the same has . . . legally denied coverage." Whatever the meaning of the additional word "legally," I agree with Judge Eberhardt that it should be interpreted as "legally sustainable," which is of course what Phoenix has indubitably accomplished by its district court judgment of nonliability as to the plaintiffs. Therefore, in my opinion, the summary judgment in favor of State Farm, Georgia Farm Bureau and Home Insurance Companies should be reversed.

What the situation now is as between these insurance companies and Phoenix, the liability insurer, is not up for adjudication in this case. The uninsured motorist insurers brought a third-party complaint in this action against Phoenix which was dismissed by a judgment not excepted to here. That order correctly held that as between the various insurers the district court decision was *not* res judicata because the uninsured motorist insurers were not a party to that action. This means of course that neither res judicata nor stare decisis applies to them. It is true that if Phoenix afforded *coverage* this would protect the uninsured motorist insurers except for the excess coverage provisions in their policies. But "cover" and "protect" are synonymous insurance terms (see Black's Law Dictionary). The Phoenix policy, under the decisions of the district court and this court, does not protect Scholz or Daugherty against these plaintiffs and they cannot recover from it; therefore, they have coverage under their own insurance to the extent to which it is applicable.

A similar situation following a somewhat different history is to be found in Motor Vehicle Acc. Indemnification Corp. v. National Grange Mut. Ins. Co., 19 N. Y. 2d 115 (224 NE2d 869).

There after a collision between Murray and Bermudez, Bermudez obtained a judgment against Murray. Murray had an automobile liability insurance policy with National Grange. National Grange brought a declaratory judgment action against Murray and Bermudez and obtained a judgment that its disclaimer of liability was proper. Bermudez called on his insurer, MVAIC, to afford coverage under the uninsured motorist provision of his policy and this MVAIC did. After paying Bermudez' claim to the extent of its uninsured motorist policy limits it filed suit against National Grange to recover the amount on the ground that National Grange did in fact afford coverage regardless of the judgment in the declaratory action. National Grange filed a plea of res judicata, and the court held that this plea was good as to the plaintiff and defendant in the tort action who were parties to the declaratory judgment but since the uninsured motorist insurer was not a party to the declaratory judgment action the judgment in that case was not res judicata as to it. We have of course reached the same conclusion in this case. As to the rights of the insurers among themselves that case further held: "If it [the uninsured motorist insurer] recovered judgment against Murray and that judgment was 'unsatisfied', MVAIC would be privileged to maintain an action directly against National for the amount of the judgment."

Regardless, however, of the rights and liabilities of the insurers among themselves, it seems to me uncontrovertible that Phoenix legally sustained its denial of coverage so far as the plaintiffs are concerned, and that the uninsured motorist insurers are therefore, under the unequivocal terms of their contracts with their insureds, bound to pay under this coverage. The motions for summary judgment by State Farm, Georgia Farm Bureau and Home Insurance should have been denied.

I am authorized to state that Judges Pannell and Evans agree with this dissent.