## 47060.   PHOENIX INSURANCE COMPANY v. BENTLEY et al.

ARGUED APRIL 3, 1972—DECIDED MAY 5, 1972—
REHEARING DENIED JULY 31, 1972—

*Greene, Buckley, DeRieux & Jones, John D. Jones, Hugh Robinson, Jr.,* for appellant.

*Joe Salem, C. Lawrence Jewett,* for appellees.

DEEN, Judge. This case should be decided by applying to its facts the pertinent policy provision: An insured is "any other person while using the automobile with the permission of the named insured, provided his actual use is within the scope of such permission."

The various States take three views of this provision: (1) the liberal or "first instance permission" view, which says that if the *initial use* is with the permission of the named insured, then the permitee remains an insured throughout; (2) the strict view, which looks at the permission situation only at the time of the accident, and (3) the "minor deviation rule" which, applied to the employer-employee situation, modifies the strict view by saying that a *minor* deviation will not annul the permission. See 5 ALR2d 600 et seq. In its leading case on the subject Georgia adopted the minor deviation rule. *Hodges v. Ocean Acc. &c. Corp.,* 66 Ga. App. 431, 436 (18 SE2d 28). "Slight and inconsequential deviations will not annul the coverage of the omnibus clause," the requirement being "that the purpose for which the car is used at the time of the accident be a purpose stated or intended at the time the bailment is made, but slight deviations are too unimportant to have attached to them by construction the import of annulling the protective features of the policy." Id., p. 436. To the same effect see *Drake v. Gen. Acc. &c. Assur. Corp.,* 88 Ga. App. 408 (77 SE2d 71); *Maryland Cas. Co. v. U. S. Fidelity &c. Co.,* 91 Ga. App. 635, 638 (86 SE2d 801).

We recognized the rule in *Ditmyer v. American Liberty Ins. Co.,* 117 Ga. App. 512 (160 SE2d 844) where the court split 5-4, and a minority recommended the adoption of the liberal *initial use* rule. That was rejected, but it was pointed out that the coverage question cannot be decided under master-servant law: "Although he may have been in the owner's employment, the issue under the permissive use or omnibus clause is not whether he was acting within the scope of his employment, as it would be if the suit were against the employer under the theory of respondeat supe-

rior. Nor is it a question of whether the deviation in going out to the drive-in beer hall was so great or substantial as to break the chain of employment until he should return to a point within its scope." Id., p. 517.

All the cases say that "scope of permission" may be express or implied. Our only question, then, is whether the deviation which took place here could be found by a jury to have been a *minor* deviation, or whether as a matter of law it is complete departure from the scope of the permission granted (not just the scope of employment).

Stevens, the employee driver, testified: "I would use [the vehicle] on company business during the day, and I would take it home at night for emergency service. Q. I call your attention to December 24, 1969; did you work on that day? A. Yes, sir. Q. And when did you get off from work? A. Around lunchtime. . . Q. Why were you not driving [your own personal automobile] on this particular occasion? A. Well, I had not been home. What I'd done, I'd actually left the Randall [employer's] shop there and went down to the service station down the road there and we just sat around and talked until I started to go home. . . Q. And you were heading home? A. Yes, sir—instead of going home, I just turned and went towards the hospital."

It thus appears certain that Stevens was within the scope of the permission in driving the truck to Randall Brothers, and in driving it from Randall Brothers back to his home where it was always kept. On the way back home he made a detour to visit a Randall Brothers employee who was in the hospital, and since the hospital was not on the route from Randall Brothers to his house this constituted a departure from the *scope of his employment.* But did it also constitute a *major* deviation from the *permissive use* granted so as to avoid coverage, as a matter of law?

This question should be left to the jury, under the authority of *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442). It is quite possible that on the trial of the case this man, who has worked for an employer for 15 years and has had a company car for 10 of those years which he

drove regularly between his home and the shop, kept at his home, serviced and had repaired, and for which he alone was responsible, may produce evidence that going by to see a sick fellow employee at the hospital on his way home was at most a minor deviation from the scope of his implied permission.

The fact that "it is the policy of the company" that certain employees take the vehicles home for use in their off time if needed (for business use) does not rule out the situation above stated. The affidavit of the employer is awkwardly worded and does not cover one of the situations shown to exist by the defendant's deposition: that is, the use by the employee in going between his home and the shop where he worked, which was a permitted use on the day in question. Therefore, it says nothing about any requirement to go between office and home and by the most direct route, or not stopping between office and home, etc. If the hospital had been on a direct route to the home, might the employee have stopped en route? Might he stop to buy a pound of coffee? Might he go home by a longer route in order to buy bread? Or to see a sick fellow employee? Where do we draw the line, absent evidence of what this and other employees had been doing with this and like vehicles for the past 10 years? Has the company insisted on strict adherence to the "shortest route" rule? Has it given implied permission to deviations of this type in the past by knowledge and ratification of similar instances in the past? All of these are questions best left for determination after full hearing.

The trial court did not err in overruling the motion for summary judgment.

*Judgment affirmed. Hall, P. J., Eberhardt, P. J., and Pannell, J., concur. Evans, J., concurs specially. Bell, C. J., Quillian, Clark and Stolz, JJ., dissent.*

EVANS, Judge, concurring specially. The insurer first filed a motion for declaratory judgment and thereafter, premised upon same and certain depositions and affidavits, filed a motion for summary judgment. The issue is not as to

whether Randall Brothers, Inc., the employer and owner of the truck, is liable for the conduct of its driver, Charles C. Stevens, as to the described collision. The issue is much more narrow and restricted in that the petition for declaratory judgment is premised on the following allegation from paragraph 6 thereof, to wit: "Your petitioner on the other hand, shows that it contends that the said Charles C. Stevens was not operating said truck at said time and place *with the permission of Randall Brothers, Inc. . . .*" (Emphasis supplied.)

So the issue is confined to whether or not Stevens had *permission* from Randall Brothers, Inc. to operate said truck at the time of the collision. The truck had been entrusted to him by his employer, and he was allowed to take it home. Under the authorities cited in the majority opinion, as applicable to the motion for summary judgment, the party opposing a motion for summary judgment is entitled to the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence. So, aside from whether or not the truck was being used "in the course of employment" I feel there was ample evidence to show that it was being used "with permission" of the employer. The employer might be held not liable in this case; and yet the employee might be liable, with insurance coverage afforded as to said employee, because he was using the vehicle "with permission of the named insured."

On motion for rehearing (which a majority has granted), appellant contends that no consideration was given by· this court to the affidavit of John B. Wilson, installation manager for Randall Brothers, Inc., which affidavit, it contends, shows that the truck was being operated at the time of the collision without permission of the employer. The material part of said affidavit is as follows: "Affiant shows that the 1968 Chevrolet truck being operated by Charles C. Stevens upon the aforesaid date was assigned to him by affiant for purposes of being used solely in connection with the business of Randall Brothers, Inc., and that the fact that said truck was to be used only upon service calls and emergency

calls of said corporation *was made known to Mr. Stevens by affiant in keeping with company policy* which had existed for a period of at least fifteen years prior to this occurrence. Affiant further shows that said Charles C. Stevens did not request permission to use said vehicle on a personal mission on said date; and that the said Charles C. Stevens was not using said vehicle on business of the said Randall Brothers, Inc., at the time of the occurrence giving rise to the two above referred to lawsuits, nor under the direction or control of Randall Brothers, Inc., and had no permission to operate the same in going to DeKalb General Hospital at said time, if that was where he was in fact going." (Emphasis supplied.) While most of the above language is a conclusion only, and cannot be considered as evidence in a motion for summary judgment (see *Code Ann.* § 81A-156 (e)) it does seek in a vague and ambiguous fashion to show that the truck was to be used only upon service calls and emergency calls of said corporation and such limitation "was made known to Mr. Stevens by affiant in keeping with company policy." For reasons best known to the appellant, the manner and method and date of transmitting this information to Stevens is not set forth and same is therefore vague and ambiguous. How did Wilson advise Stevens that he was not to use the truck except on the employer's business? Was it by word of mouth? Was it by written notice or letter? If so, who handed the letter or written notice to Stevens? Was it by emplacement of a notice on a bulletin board? When was this information transmitted to the employee? This court has no way of knowing how or when such information was transmitted and that is quite important. It would have been easy for the affiant to have stated in his affidavit, if he could have done so truthfully, as to how, when and who transmitted this information to Stevens and the method used.

Having elected to leave his affidavit vague and ambiguous, same is governed by *Southern R. Co. v. Hobbs,* 121 Ga. 428 (1) (49 SE 294): "The testimony of a party who offers himself as a witness in his own behalf is to be construed

most strongly against him when it is self-contradictory, vague, or equivocal. *W. & A. R. Co. v. Evans,* 96 Ga. 481; *Freyermuth v. R. Co.,* 107 Ga. 32; *Ray v. Green,* 113 Ga. 920; *Farmer v. Davenport,* 118 Ga. 289. And he 'is not entitled to a finding in his favor if that version of his testimony the most unfavorable to him shows that the verdict should be against him.' *Southern Bank v. Goette,* 108 Ga. 796."

The record shows that Stevens deposed that he was on duty seven days a week, twenty-four hours a day (T-95) and that Randall Brothers, Inc. had other trucks, all of which were left on the yard except the truck that was entrusted to and used by Stevens (T-96); and that Stevens kept the truck under his control and direction; that he used it on company business during the day and took it home during the night; that he used it on emergency service during the night (T-70). *This witness did not at any time testify that he was ever ordered, informed or advised by his employer not to use the truck except on company business or that he was forbidden by his employer to use it except on company business.* Again, let it be remembered that we are here considering a motion for summary judgment where the opposing party must be given the benefit of all reasonable doubts and all favorable inferences which may arise from the evidence. *Caldwell v. Gregory,* 120 Ga. App. 536, 538 (171 SE2d 571).

In *Smith v. Jones,* 185 Ga. 236, 241 (194 SE 556) it is stated: "There are methods of expressing agreement other than by word of mouth. Conduct can be as articulate as language. An old adage declares that actions speak louder than words. The books are full of instances where parties were estopped though they were speechless at the time. Indeed, silence, when the occasion calls for utterance, is a frequent ground of estoppel." In the case sub judice the very fact that the owner permitted the employee to take the truck home with him day after day, and night after night, while requiring all others to remain on the grounds; that the record fails to show any statement by the em-

ployee that he had ever been forbidden to use the truck for his own personal ends; the failure of the witnesses for the owner to testify as to any definite method by which the employee had ever been told or written or notified that he could not use the truck except on the owner's business; are all sufficient circumstances from which it may be assumed, in this motion for summary judgment case (where all inferences and doubts must be resolved in favor of the one opposing said motion), that the employee had never been forbidden the use of the truck for his own ends.

I, therefore, concur in the judgment of affirmance by the majority members of this court.

STOLZ, Judge, dissenting. The movant's affidavits affirmatively show: (1) that the truck was to be used only upon service and emergency calls in accordance with Randall Brothers, Inc.'s company policy; (2) that this policy was made known to the employee; and (3) that the employee had not requested, and did not have, the employer's permission to drive the truck to DeKalb General Hospital at the time in question. In what particular manner the company policy was communicated to the employee, is irrelevant, since there is no countershowing that he had no notice of such policy. Conceding that a major deviation from the permissive use granted was necessary to avoid coverage, as the majority holds, I believe that such major deviation is shown as a matter of law not only by the movant's affidavits, but by the fact that the hospital is on the *eastern* side of metropolitan Atlanta, whereas both the place of employment and the Smyrna home of the employee are on the opposite, or *western*, side of the city— about as far out of the way as it was possible to go! Speculation as to whether the employee had implied permission to go home by a somewhat longer route to make incidental stops, is unnecessary in view of the fact, appearing without contradiction, that the accident occurred while the truck was being operated in a direction approximately 180 degrees and clear across town from the route from his place of employment to his home.

There was no conflict in the evidence and all reasonable deductions and inferences therefrom and, in my opinion, the appellant movant carried the burden of proof that the use of the vehicle was a major deviation from the permissive use granted. I respectfully dissent from the affirmance of the overruling of the insurer's motion for summary judgment.

I am authorized to state that Chief Judge Bell and Judges Quillian and Clark concur in this dissent.