**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 31, 2022**

# In the Court of Appeals of Georgia

A22A0840. STANKOVICH v. AXIS INSURANCE COMPANY.

DOYLE, Presiding Judge.

Melanie Stankovich sued Axis Insurance Company, her employer's underinsured motorist ("UM") carrier, for damages related to injuries she sustained when she was struck by a car while removing a safety cone used to divert traffic from a coworker's work truck. Axis moved for summary judgment, and the trial court granted the motion. Stankovich appeals, arguing that the trial court erred by granting summary judgment to Axis on the grounds that at the time of the accident (1) she was not "occupying" a "temporary substitute vehicle for a covered vehicle" as defined by the Axis policy, and (2) she was not "using" the covered vehicle such that OCGA § 33-7-11 (b) (1) (B) mandated coverage under the Axis policy. For the following reasons, we affirm.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]"[1] "We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant."[2] "'Contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court.'"[3]

Here, the record shows that on September 26, 2018, Stankovich was employed by Skye Rentals LLC, which was insured by Axis. Stankovich's co-worker, Luis Luna, was driving a Skye Rentals truck that broke down on the side of the road. Luna set out a traffic cone to divert traffic, and, at the direction of Stankovich's supervisor, called Stankovich to assist him.[4]

---

[1] OCGA § 9-11-56 (c).

[2] (Punctuation omitted.) *Crown Series, LLC v. Holiday Hospitality Franchising, LLC*, 357 Ga. App. 523 (851 SE2d 150) (2020).

[3] *Auto-Owners Ins. Co. v. Parker*, 359 Ga. App. 267 (857 SE2d 245) (2021).

[4] Luna previously had advised Stankovich that the truck had been running poorly and that he might need her help if it broke down.

Stankovich arrived at the scene in her own car at approximately 5:30 to 6:00 a.m., pulled up behind the truck, and turned on her headlights and emergency flashers. After ten or fifteen minutes, Luna cranked the Skye Rentals truck again, and it started. Luna and Stankovich decided that Luna would "drive down the road a short distance and find somewhere to park the truck and leave it[,] and she would follow [him] in her car and pick [him] up because the truck was not running right and having issues."

Luna drove off as Stankovich was retrieving the traffic cone, which was approximately eight feet from her own car. As she was walking back to her vehicle with the cone, Stankovich was struck from behind and trapped underneath a car, sustaining serious injuries.

Following the denial of UM coverage under the Axis policy, Stankovich sued the drivers of two vehicles involved in the accident. The insurers of both drivers and her own UM carrier paid Stankovich their policy limits, and she received workers compensation benefits. Stankovich subsequently amended her complaint to add Axis as a party, alleging breach of contract based on its denial of UM coverage.

The Axis policy provides $1 million in UM coverage on behalf of Skye Rentals for covered autos. For purposes of such coverage, an individual insured is defined as

3

the named insured and any family members, as well as "[a]nyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' The covered 'auto' must be out of service because of its breakdown, repair, servicing, 'loss[,]' or destruction." The policy defines "occupying" as "in, upon, getting in, on, out[,] or off."

Axis moved for summary judgment, and the trial court granted the motion, finding that (1) there was no coverage under the policy because Stankovich was not "using" the Skye Rentals truck when she was injured; (2) although her own vehicle qualified as a "temporary substitute for a covered auto" under the policy, she was not "occupying" it at the time of the accident; and (3) Stankovich was not an insured under the UM statute because she was not "using" the Skye Rentals truck at the time of the accident. This appeal followed.

Stankovich contends that the trial court erred by granting summary judgment to Axis because material questions of fact remain as to whether she was an insured at the time of the accident under her policy and the Georgia UM statute.[5] We disagree.

Our analysis requires us to construe the Axis policy.

Construction and interpretation of an insurance policy are matters of law for the court. An insurance policy is a contract and subject to the

---

[5] See OCGA § 33-7-11 (b) (1) (B) (defining "[i]nsured").

ordinary rules of contract construction, and the parties are bound by its plain and unambiguous terms. However, if a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous, and the statutory rules of contract construction will be applied.[6]

1. Stankovich contends that she was insured under the Axis policy because she was "using" the Skye Rental truck at the time of the accident. We disagree.

Under OCGA § 33-7-11 (b) (1) (B) (2), an insured includes "any person who uses, with the expressed or implied consent of the named insured, the motor vehicle to which the policy applies."

> This Court has . . . defined the term "use" as "to employ for some purpose." Still, we have been careful to note that an exact or bright-line definition of the term is elusive, and is dependent to a great extent on the circumstances of the case. Whether an injury arose out of the use of a motor vehicle, turns on consideration of (i) the physical proximity of the

---

[6] (Citations and punctuation omitted.) *American Strategic Ins. Corp. v. Helm*, 327 Ga. App. 482, 485 (759 SE2d 563) (2014), quoting *Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Assn., Inc.*, 288 Ga. App. 355, 356-357 (654 SE2d 207) (2007), and citing *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996), *Landmark American Ins. Co. v. Khan*, 307 Ga. App. 609, 612 (1) (705 SE2d 707) (2011). See also *Auto-Owners Ins. Co. v. Neisler*, 334 Ga. App. 284, 287 (1) (779 SE2d 55) (2015) ("[If] multiple constructions [of a policy term] are all logical and reasonable, such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured.") (punctuation omitted).

5

injury site to the vehicle, (ii) the nature of the conduct which caused the situation of jeopardy, and (iii) whether the vehicle was being utilized in the plain and ordinary sense of the word. In evaluating physical proximity, we consider more than how close the [vehicle] was to the accident scene, because "use" also embraces the notion that the person using the [vehicle] had control over it or that such control was reasonably at hand. Thus, while the term "use" of a motor vehicle does extend beyond actual physical contact, it does not imply remoteness, and the term contemplates use of the motor vehicle *as a vehicle* at the time of the injury.[7]

Here, Stankovich was not in the Skye Rentals truck at any point on the day of her accident; she never occupied, entered, exited, unloaded, loaded, or controlled it in any manner. And at the time she was struck, the truck had left the scene. Under these undisputed circumstances, the trial court properly concluded as a matter of law

---

[7] (Emphasis in original.) *Wilkinson v. Ga. Farm Bureau Mut. Ins. Co.*, 351 Ga. App. 891, 894 (833 SE2d 579) (2019), quoting *Wingler v. White*, 344 Ga. App. 94, 101 (1) (808 SE2d 901) (2017), *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 112-113 (1) (722 SE2d 923) (2012). See also *Bernard v. Nationwide Mut. Fire Ins. Co.*, 206 Ga. App. 519, 520 (2) (426 SE2d 29) (1992) ("[U]se of the vehicle within the contemplation of a liability policy or statute would seem to extend at least to the point, beyond physical contact, where control over the instrumentality is easily or reasonably at hand, and particularly when it is still being 'utilized'."), quoting *Hartford Accident &c. Co. v. Booker*, 140 Ga. App. 3, 4 (1) (230 SE2d 70) (1976).

that Stankovich was not using the Skye Rentals truck at the time of her accident, and she was not insured under the Axis policy under OCGA § 33-7-11 (b) (1) (B) (2).

2. Stankovich also argues that she was insured under the Axis policy because her personal vehicle qualified as "a temporary substitute for a covered auto" at the time of the accident. Again, we disagree.

The Axis policy insured a person occupying "a temporary substitute for a covered auto." It is undisputed that Stankovich drove her personal car to the location where the Skye Rentals truck, which "had been running poorly," had broken down on the roadway. Although Luna was ultimately able to start the engine, he decided to "[take] the truck out of service and out of commission because it was broken down," and he drove it off the roadway to a safe location to park and leave it. According to Luna, his "plan [with Stankovich] the entire time was to use her car to follow the truck, park it, and use her vehicle because the truck was breaking down and not working properly."

Thus, the issue here is whether the Skye Rentals truck was, *at the time Stankovich was injured*, "out of service because of its breakdown, repair, servicing,

'loss[,]' or destruction" such that her car qualified as a temporary substitute vehicle within the meaning of the Axis policy.[8]

This Court, facing a similar question in *State Farm Mut. Automobile Ins. Co. v. Lietz*,[9] explained that "the purpose of the temporary substitute provision . . . is not to defeat liability but reasonably *to define coverage by limiting the risk to one operating vehicle at a time for a single premium*."[10] "The provision is not to be narrowly construed as limiting coverage but *will be construed in a manner to make the policy reasonably definite as to the vehicle covered* and, at the same time, afford continuous protection at a premium rate fair to both insured and insurer."[11] Further,

> *if a vehicle is operable, the owner must take some step to preclude its use by another during the substitution period or there will be a material increase in the risk contemplated by the insurer*. If the vehicle insured

---

[8] The policy does not otherwise define "temporary substitute for a covered auto," and it does not define "out of service[,] . . . breakdown, repair, [or] servicing."

[9] 122 Ga. App. 596 (178 SE2d 218) (1970).

[10] (Punctuation omitted; emphasis supplied.) Id. at 598, quoting *Hemphill v. Home Ins. Co.*, 121 Ga. App. 323, 333 (2) (174 SE2d 251) ("[T]he purpose of a substitution clause is not to narrowly limit or defeat coverage, but to make the coverage reasonably definite as to the vehicle the insured intended normally to use, while at the same time permitting operations to go on should the particular vehicle named be temporarily out of commission.") (punctuation omitted).

[11] (Punctuation omitted.) *Hemphill*, 121 Ga. App. at 333 (2).

8

can be operated, some overt act is required to prove its withdrawal from service, although this would not necessarily require its being garaged. . . . [T]he phrase . . . "breakdown" means either a condition rendering the vehicle inoperable or one which would make its use dangerous, as opposed to a breakdown of a non-essential component.[12]

Here, pretermitting whether Stankovich's car could have become a "temporary substitute vehicle," it was not a substitute vehicle under the policy at the time she was injured. Axis, for purposes of this analysis, insured a single vehicle at a time – either the Skye Rentals truck *or* Luna's car. At the time Stankovich was struck and injured, Luna was driving the Skye Rentals truck to a nearby parking lot. So, although the truck may well have been "removed from service" and Stankovich's car could have become a temporary substitute vehicle insured under the policy had the two used Stankovich's car *after* Luna parked the truck, that is not what occurred at the time Stankovich was injured.

---

[12] (Citation and punctuation omitted; emphasis added.) *Lietz*, 122 Ga. App. at 599.

The policy simply does not require Axis to insure both vehicles at the same time. Accordingly, Stankovich's vehicle was not a temporary substitute vehicle under the policy at the time of her injuries, and Axis was entitled to summary judgment.[13]

*Judgment affirmed. Reese, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[13] Cf. id. (holding that car involved in an accident was not a "temporary substitute vehicle" because the insured vehicle, which had a broken heater, could have been used at the time of the accident and therefore had not been "withdrawn from normal use because of its breakdown"). See also *Bullington v. Fayette County School Dist.*, 246 Ga. App. 463, 467 (2) (540 SE2d 664) (2000) ("A judgment right for any reason will be affirmed."). Because Stankovich's car was not a temporary substitute vehicle at the time of her accident, we need not address whether she was "occupying" it as required by the policy or "using" it as required by OCGA § 33-7-11 (b) (1) (B).